BOARD OF TRUSTEES FOR STATE TECHNICAL COLLEGES
*v.* FEDERATION OF TECHNICAL COLLEGE TEACHERS,
LOCAL 1942, AMERICAN FEDERATION OF
TEACHERS, AFL-CIO

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 14—decision released September 18, 1979

*Robert F. McWeeny,* for the appellant (defendant).

*Robert E. Walsh,* assistant attorney general, with whom were *Bernard F. McGovern, Jr.,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (plaintiff).

LONGO, J.  The defendant, the Federation of Technical College Teachers, Local 1942, American Federation of Teachers, AFL-CIO (hereinafter the union), has appealed from a judgment of the Superior Court which granted the application of the plaintiff, the Board of Trustees for State Technical Colleges (hereinafter the board), to vacate an arbitration award and which denied the union's cross application seeking confirmation of the arbitrator's award.  The application and cross application were made pursuant to the provisions of General Statutes §§ 52-417 and 52-418.[1]

The finding of the trial court discloses the following:  The board and the union were parties to a collective bargaining agreement dated April 15, 1977.  The agreement contains provisions concerning wages, hours and conditions of employment of permanent employees of the board who are full-

---

[1] "[General Statutes] Sec. 52-417.  APPLICATION FOR ORDER CONFIRMING AWARD.  At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is not in session, to any judge thereof, for an order confirming the award.  The court or judge shall grant such order unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

"[General Statutes] Sec. 52-418.  VACATING AWARD. . . . [T]he superior court . . . shall make an order vacating the award upon the application of any party to the arbitration . . . (d) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . ."

time members of the faculties of the state technical colleges, and provides, in article XVIII, as follows: "C. 1. Entitlement and Conditions. a. Any full-time faculty member shall accrue sick leave with pay for continuous service at the rate of one and one-quarter days per calendar month from the date of initial employment." The collective bargaining agreement was submitted for approval to the General Assembly pursuant to General Statutes § 5-278 (b), with a transmittal letter. The letter, however, made no reference, apparently erroneously, to the sick leave provision in the agreement, but referred only to a contract provision regarding vacations of twelve month employees.

A dispute arose between the parties relating to the interpretation of article XVIII, C, 1a. It was the plaintiff board's contention that, under the provisions of §§ 10-329a and 5-247 (a) of the General Statutes and of §§ 5-247-1 and 5-247-2 (a) of the regulations of Connecticut state agencies, full-time permanent faculty employees who work 171 days over ten months of the year are entitled to only twelve and one-half days of sick leave per year. The union countered that under the formula set forth in the parties' agreement, teachers were entitled to fifteen days of sick leave per year.

To resolve this dispute, in accordance with the collective bargaining agreement, the parties agreed to submit the following question to arbitration: "How many days of sick leave per year do full-time faculty members who work 171 days accrue under the provisions of Article XVIII, C, 1a?" Following a hearing, the arbitrator issued the following award: "Full-time faculty members who worked

171 days accrue 15 days of sick leave per year under the provisions of Article XVIII, C, 1a, and have done so since September 1, 1977. The records of such full-time faculty members should so reflect."

In the board's submission to arbitration[2] and at the time the parties signed the joint submission stated above, the board expressly reserved and refused to waive its right to claim that the union's "fifteen day sick leave" position conflicted with state statutes and regulations. The arbitrator accepted the reservation of rights and expressly stated that he was not empowered to determine whether article XVIII, C, 1a, of the contract was in conflict with the state statutes and regulations.

Upon the board's appeal from the arbitrator's award, the trial court concluded that (1) the arbitrator's decision conflicted with the requirements of state statutes and regulations mandating that full-time faculty employees of the board who work ten months per year receive only twelve and one-half sick days per year; (2) the board had not waived its right to claim that the union's position was inconsistent with law; (3) the provisions of the collective bargaining agreement did not supersede the pertinent statutes and regulations; and (4) the arbitrator exceeded his authority in awarding a remedy in conflict with law. Judgment was accordingly rendered for the board vacating the arbitrator's award, and the union has appealed to this court.

---

[2] "Now comes the Board of Trustees, without waiving any rights to contend that the Federation's position is inconsistent with state statutes or regulations, and submits the following issue for decision: 'How many days of sick leave per year do full-time faculty members who work 171 days accrue under the provisions of Article XVIII, C, 1a?'"

I

It is appropriate to set forth initially the panoply of statutory and regulatory provisions which will underpin our discussion and guide our disposition of the present case, and some brief additional facts in relation thereto. The formula for the calculation of the amount of sick leave days for employees in the state service is set forth in General Statutes §§ 5-247 (a)[3] and 10-329a.[4] Under these sections, the appointing authority, which is, in this case, the plaintiff board, must grant sick leave days to qualified state employees at the rate of "one and one-quarter working days for each completed calendar month of continuous full-time service." General Statutes § 5-247 (a). The commissioner of admin-

---

[3] "[General Statutes] Sec. 5-247. SICK LEAVE. CREDIT ON REEMPLOYMENT. (a) Each appointing authority shall grant to each full-time permanent employee in the state service who has furnished satisfactory proof of illness or injury, such sick leave with pay as has accrued to his credit at the rate of *one and one-quarter working days for each completed calendar month of continuous full-time service*. The commissioner of administrative services may issue regulations concerning the accrual, prorating and granting of sick leave with pay to other employees in the state service and extending sick leave with pay or with part pay for longer periods to full-time permanent employees disabled through illness or injury. Each such employee who retires under the provisions of chapter 66 shall be compensated, effective as of the date of his retirement, at the rate of one-fourth of his daily salary for each day of sick leave accrued to his credit as of his last day on the active payroll up to a maximum payment equivalent to sixty days' pay. Such payment for accumulated sick leave shall not be included in computing retirement income and shall be charged by the state comptroller to the department, agency or institution in which the employee worked." (Emphasis added.)

[4] "[General Statutes] Sec. 10-329a. JURISDICTION OVER PROFESSIONAL STAFFS OF HIGHER EDUCATION UNITS. Notwithstanding the provisions of any general statute or special act to the contrary, the selection, appointment, assignment of duties, amount of compensa-

istrative services is empowered, pursuant to § 5-247 (a), to issue regulations, carrying the force and effect of law, concerning the accrual, prorating and granting of sick leave. Section 5-247-1 of the state personnel policy board regulations accordingly grants all employees in state service sick leave for continuous service from the date of initial employment, in conformity with the rate of accrual formula set forth in § 5-247-2 (a) of the regulations, which provides: "Sick leave accrues at the rate of *one and one-quarter working days per completed calendar month* of continuous full-time service." (Emphasis added.) What was at issue before the arbitrator was the conflict between this formula, including the precondition that sick leave accrue only in those months in which employees work the complete month, and the formula set forth in the collective bargaining agreement between the parties, which states merely that sick leave accrues "per calendar month." The plaintiff board took the position that the employee teachers completed only ten working months per year because of summer recess and were thus entitled to only twelve and one-half days of sick leave under the statutes and under § 5-247-2 (a) of the regulations. The defendant union argued that the "months" mentioned in the

tion, sick leave, vacation, leaves of absence, termination of service, rank and status of the individual member of the respective professional staffs of the system of higher education shall be under the sole jurisdiction of the respective boards of trustees within available funds, provided said boards shall adopt for their respective institutions any general policy of the state which applies to all state employees with respect to necessary sick leave, vacation, and salary adjustments. Said boards shall determine who constitutes the professional staffs of their respective units and establish compensation and classification schedules for their professional staffs. Each constituent board shall annually submit to the personnel policy board a list of the positions which it has included within the professional staff."

agreement referred to the twelve calendar months and that the teachers were thus entitled to fifteen days of sick leave per year.

Postponing a discussion of the merits of this controversy for the moment, two relevant statutory provisions set forth the conditions under which a conflict between a provision of a state employee collective bargaining agreement and a state statute or regulation may be resolved in favor of the contractual provision. General Statutes § 5-278 (e) provides in part that "[w]here there is a conflict between *any agreement* reached by an employer and an employee organization *and approved in accordance with the provisions of sections 5-270 to 5-280, inclusive,* on matters appropriate to collective bargaining, as defined in said sections, and any general statute or special act, or rules or regulations adopted by state agents such as a personnel board, the terms of such agreement shall prevail." (Emphasis added.) The applicable language of the provisions of "sections 5-270 to 5-280, inclusive" is found in § 5-278 (b) as follows: "Any agreement reached by the negotiators shall be reduced to writing. A *request for funds necessary to implement such written agreement and for approval of any provisions of the agreement which are in conflict with any statute or any regulation* such as those of the personnel board *shall be submitted by the bargaining representative of the employer* within fourteen days of the date on which such agreement is reached to the legislature which may approve or reject such request as a whole by a majority vote of those present and voting on the matter; but, if rejected, the matter shall be returned to the parties for further bargaining." (Emphasis added.) It is thus apparent that § 5-278 (b) requires that the

bargaining representative of the employer transmit the final contract to the legislature for approval of funding and of any contract terms in conflict with statute or regulation. In the present case, only the collective bargaining agreement was sent to the legislature, and, as we initially indicated, the accompanying transmittal letter was silent as to a conflict in the sick leave provision of the agreement, erroneously indicating that a conflict existed only in relation to vacation leave. It is equally evident that, in view of the express requirement of § 5-278 (b) mandating that the legislature be apprised of collective bargaining agreement terms which conflict with law before approving such an agreement, where no request for approval of the conflicting sick leave provision is submitted to the legislature, it cannot be said that such a request is "approve[d] or reject[ed]" in accordance with § 5-278 (b).

Against this background, we find the defendant union's reliance on the waiver theory to be misplaced. We also find unsound its corresponding argument that by submitting to arbitration the board had waived its right to contest the arbitration award as violative of statute and regulation and thus in excess of the arbitrator's powers. The legal issues that arise from the facts of this case do not encompass a waiver defense. The simple fact is that if the award rendered by the arbitrator violated the full-time state employee sick leave formula as expressed in the pertinent statutes and regulations, the award would be illegal and could not stand. Gorman, Basic Text on Labor Law, Unionization and Collective Bargaining (1976) pp. 593–98. More specifically, the union in support of its waiver defense relies on a line of cases both from this court and from other jurisdictions which

do not speak to the illegality issue here in controversy. See, e.g., *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, 168 Conn. 54, 63, 357 A.2d 466; *Costello Construction Corporation* v. *Teamsters Local 559*, 167 Conn. 315, 355 A.2d 279; see also *O'Malley* v. *Petroleum Maintenance Co.*, 48 Cal. 2d 107, 308 P.2d 9; *National Cash Register Co.* v. *Wilson*, 8 N.Y.2d 377, 171 N.E.2d 302; *Waterbury* v. *Waterbury Police Union Local No. 1237*, 176 Conn. 401, 407 A.2d 1013. Properly construed, *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, supra, *Costello Construction Corporation* v. *Teamsters Local 559*, supra, and the California and New York cases relied upon stand for the proposition that a party's submission to arbitration may constitute a waiver as to the issue of the *arbitrability* of the dispute; *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, supra, 62; and further, that the threshold question of *arbitrability* may be initially committed to the arbitrators themselves for determination under the terms of an employment contract. *United Steelworkers of America* v. *United States Gypsum Co.*, 492 F.2d 713 (5th Cir.); Gorman, Basic Text on Labor Law, Unionization and Collective Bargaining (1976) pp. 586–87; see *New Britain* v. *Connecticut State Board of Mediation & Arbitration*, 178 Conn. 557, 424 A.2d 263; annot., 33 A.L.R.3d 1242. The arbitrability of the present contract dispute, however, is not at issue in this case. No case cited, moreover, indicates that a party is estopped to claim, because of a waiver, that the arbitrator's award violates the mandates of specific statutory and regulatory provisions.

It is significant in this connection that the arbitrator himself did not view the submission as indicat-

ing a waiver of the board's claim in relation to illegality. While an agreement for the submission of an issue to arbitration constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided by the arbitration; see *Local 1219* v. *Connecticut Labor Relations Board,* 171 Conn. 342, 354, 370 A.2d 952; *Gores* v. *Rosenthal,* 150 Conn. 554, 557, 192 A.2d 210; here, the clearly expressed and agreed upon issue presented to the arbitrator was only the contractual interpretation of the provisions of article XVIII, C, 1a of the collective bargaining agreement. The arbitrator disavowed any attempt to construe state statutes and regulations, and expressly stated that he was not empowered to determine whether the collective bargaining agreement sick leave provision was in conflict with statute or regulation. The issue of the legality of the award rendered was thus not, in view of the submission, within the charter of the arbitration proceedings. Therefore, while we continue to recognize and approve the waiver theory in relation to the threshold issue of arbitrability; *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* supra; *New Britain* v. *Connecticut State Board of Mediation and Arbitration,* supra; it has no place in the context of the present case.[5]

In light of our discussion thus far, two issues must be resolved for a decision in this case: (1)

[5] We have held that "[l]egal as well as factual disputes may be designated by the [collective bargaining] contract to be within the purview of the arbitrators." *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121–22, 318 A.2d 84; *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 197, 169 A.2d 646. In the present case, however, we do not have the collective bargaining agreement before us and, in any event, the arbitrator's express statement indicating that he would not determine the legal aspects of the parties' dispute clearly demonstrates that no legal issue was committed for decision to the arbitrator.

whether the trial court erred in concluding that the amount of sick leave days awarded to the defendant union by the arbitrator conflicted with statute and regulation, and hence exceeded the arbitrator's powers, and if so; (2) whether the court erred in concluding that the supersedure provisions of § 5-278 did not operate nonetheless to allow the enforcement of the conflicting sick leave day provision in the agreement.

## II

We are in agreement with the trial court's conclusions that General Statutes §§ 10-329a and 5-247 (a), and § 5-247-2 (a) of the personnel board regulations require that full-time faculty employees of the plaintiff board who work ten months a year are entitled to only twelve and one-half sick leave days per year, and that the arbitrator's award, authorizing fifteen days sick leave per year, conflicted with the statutes and regulations and was thus illegal and rendered in excess of the arbitrator's powers. The formula set forth in General Statutes § 5-247 (a) and § 5-247-2 (a) of the regulations clearly and unequivocally provides for the accrual of sick leave at the rate of one and one-quarter working days per completed calendar month of continuous full-time service. Pursuant to § 5-247-2 (a) (1) of the regulations, sick leave starts to accrue only on the first working day of the calendar month. It is not disputed that full-time faculty members of the state technical colleges work 171 days a year and that faculty members work these days in a period of no more than ten months. Under the regulations and General Statutes § 5-247 (a), the use of the word "completed," which word is absent from the collective bargaining agreement, indicates that accrual of

sick leave is to be based upon actual working months of service as faculty employees. It is reasonable to conclude that the statutory and regulatory framework does not contemplate the accrual of sick leave days during periods in which the faculty is not working. To hold otherwise would appear to create a windfall in favor of the teachers. Thus, sick leave days accrue at the rate of one and one-quarter days per month for ten working months, for a total of twelve and one-half days per year. The fifteen day sick leave award rendered by the arbitrator was in conflict with the provisions of § 5-247 (a) of the General Statutes and the regulations described above. "Just as private parties cannot expect a court to enforce a contract between them to engage in conduct which is illegal or otherwise contrary to public policy, they cannot expect an intervening arbitral award approving (or ordering) that conduct to receive judicial endorsement." Gorman, Basic Text on Labor Law, Unionization and Collective Bargaining (1976) p. 593. In such a case, we are not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award.[6] See *Botany Industries, Inc.* v. *New York Joint Board, Amalgamated Clothing Workers,* 375 F. Sup. 485, 490 (S.D. N.Y.), vacated on other grounds, 506 F.2d 1246 (2d Cir.) ; *International Union, United Automobile, Aerospace, and Agricul-*

---

[6] In 1960, the United States Supreme Court decided three cases involving the function of courts on judicial review of arbitration awards. These cases, *United Steelworkers of America* v. *American Mfg. Co.,* 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403; *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409; and *United Steelworkers of America* v. *Enterprise Wheel & Car Corporation,* 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424, commonly referred to as the *Steelworkers* trilogy, mandate extremely limited review of arbitration awards. Judicial review of the legality of arbitration

*tural Implement Workers of America (UAW), Local 985, AFL-CIO* v. *W. M. Chace Co.,* 262 F. Sup. 114, 117 (E.D. Mich.) ; *Washington-Baltimore Newspaper Guild, Local 35* v. *Washington Post Co.,* 442 F.2d 1234 (D.C. Cir.). If the contract term is illegal in light of conflicting statutes, it is not legitimated by the arbitration process; and if the agreement should not on that account be enforced, it is not rendered enforceable by an arbitrator's decision. See *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 424–25, 294 A.2d 546; *Beit* v. *Beit,* 135 Conn. 195, 198, 63 A.2d 161; *Wisconsin Employment Relations Commission* v. *Teamsters Local No. 563,* 75 Wis. 2d 602, 612–14, 250 N.W.2d 696; *Board of Education* v. *Wisconsin Employment Relations Commission,* 52 Wis. 2d 625, 635, 191 N.W.2d 242; *Black* v. *Cutter Laboratories,* 43 Cal. 2d 788, 278 P.2d 905. We thus hold that the trial court did not err in concluding that the arbitrator's award conflicted with law, and was thus rendered in excess of the arbitrator's powers.

## III

As we have discussed, part I, infra, a conclusion that the arbitrator's award conflicts with law does not end the matter, since, under General Statutes §§ 5-278 (b) and 5-278 (e) a collective bargaining

awards, as in the present case, does not, however, conflict with the scope of review announced in the *Steelworkers* trilogy. In those cases, the Supreme Court was concerned with the *merits* of an arbitrator's award and the interpretation and construction of the collective bargaining agreement. In contrast, judicial review of an attack challenging the legality of an award is *not* concerned with whether the arbitrator has properly construed the agreement, and does not ask whether the court agrees with the arbitrator's interpretation of the agreement. In such a case, we are concerned only with whether the collective bargaining agreement, and, a fortiori, the arbitration award itself, is capable of being enforced.

agreement term may supersede inconsistent statutes and regulations, provided that the appropriate procedure has been followed. We conclude, however, as did the trial court, that the supersedure provisions of § 5-278 did not operate to save the sick leave provision in the agreement. Although the legislature approved the collective bargaining agreement between the parties on May 18, 1977, the transmittal letter indicated the existence of a conflict with law only in relation to vacation leave for twelve-month employees. General Statutes § 5-278 (b) implicitly requires that, in order for the legislature to "approve or reject" a collective bargaining agreement term in conflict with law, the particular contract term must be stated distinctly and correctly by the employer in the transmittal of the contract to the legislature. If the notification required by § 5-278 (b) did not apprise the legislature of the conflicting sick leave term, then that term, at variance with General Statutes § 5-247 (a) and regulation § 5-247-2 (a), would be ultra vires. Put another way, a term at variance with law, not approved by the legislature in accordance with General Statutes § 5-278 (b), does not enjoy the preferential position provided for legislatively approved conflicting terms by § 5-278 (e), but is rendered a nullity. Neither party to the agreement is therefore entitled to enforce that term. As the conflicting sick leave term was never "approved in accordance with the provisions of [§ 5-278 (b)]"; General Statutes § 5-278 (e); the supersedure process did not operate, and the rules concerning sick leave contained in General Statutes § 5-247 (a) and regulation § 5-247-2 (a) are controlling. We therefore hold that the trial court did not err in concluding that the sick leave term in the parties' agree-

ment did not supersede the conflicting provisions of law, and accordingly, in vacating the award rendered by the arbitrator.

There is no error.

In this opinion the other judges concurred.