CONNECTICUT STATE COLLEGE AMERICAN
ASSOCIATION OF UNIVERSITY PROFESSORS *v.*
CONNECTICUT STATE BOARD OF LABOR
RELATIONS ET AL.
(12196)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

92

Argued June 6—decision released July 30, 1985

*Joel M. Ellis,* with whom, on the brief, was *William S. Zeman,* for the appellant (plaintiff).

*Joseph M. Celentano,* assistant counsel, for the appellee (named defendant).

*Robert E. Walsh,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellees (defendant state et al.).

SHEA, J. The dispositive issue in this case is whether a statute that has been enacted to be effective at a future date becomes by operation of law part of a state employee collective bargaining agreement entered into prior to that date, where no contrary intention is expressed. The plaintiff, Connecticut State College American Association of University Professors (CSC-AAUP), is an employee organization acting as the exclusive statutory representative of a bargaining unit composed of members of the faculty employed by the board of trustees for the Connecticut state colleges. The board of trustees, as well as the state, have been made defendants in this appeal from the dismissal of the plaintiff's petition to the state board of labor relations (SBLR) seeking a declaratory ruling that the state and the board of trustees had engaged in an act prohibited by General Statutes § 5-272. The trial court affirmed the decision of the SBLR dismissing the petition on the merits. From that judgment the plaintiff has appealed to this court and has raised various issues[1]

---

[1] The statement of issues in the plaintiff's brief is as follows:

"1. Where the State, as employer, enters into a collective bargaining agreement with a union representing state employees, and, thereafter, by statute unilaterally changes one of the conditions of employment set forth in said Agreement (despite its agreement not to effect any such change), has the State violated its obligation to refrain from failing to bargain in good faith concerning adverse unilateral changes in conditions of employment and has the State committed a practice prohibited by C.G.S. §§ 5-272 (a) (1) and (4)?

"2. Where an appellant in an administrative appeal to the Superior Court claims that the *decision,* as rendered by the agency, itself violates the Contracts Clause of the U. S. Constitution, is such a claim properly before the Superior Court under C.G.S. § 4-183 (g) (1) which provides that the Court may reverse an agency's *decision* if it is in violation of constitutional provisions?

"3. If a claim that an agency's *decision* is in violation of the Contracts Clause of the U. S. Constitution may be raised in an administrative appeal

of statutory construction, constitutional law and civil procedure that are involved in the conclusion of the SBLR, affirmed by the trial court, that the defendants did not engage in the prohibited act of "refusing to bargain collectively in good faith with an employee organization." See General Statutes § 5-272 (a) (4). In our disposition of the appeal we reach none of the constitutional issues and few of the other issues raised. We conclude that the change in the law that the plaintiff claims to have modified the retirement provisions of the collective bargaining agreement was included in that contract by operation of law. Accordingly, we find no error in the judgment of the trial court.

The plaintiff, CSC-AAUP, and the defendant board of trustees for state colleges, acting in behalf of the state, entered into a collective bargaining agreement for the period August 24, 1979, to August 19, 1982. This contract contained provisions continuing for the duration of such term state and federal fringe benefits, including retirement plans, that were uniformly available to bargaining unit members at the time of signing the agreement, July 27, 1979, "unless specially

pursuant to C.G.S. § 4-183 (g) (1), is that claim properly before the Superior Court in spite of the fact that no claim was made before the agency that its decision not yet announced was in violation of the Constitution when the nature and basis of the decision was not known to the plaintiff prior to its rendition?

"4. If a claim that an agency's decision is in violation of the Contracts Clause of the U. S. Constitution may be raised in an administrative appeal pursuant to C.G.S. § 4-183 (g) (1), is that claim properly before the Court in spite of the fact that the plaintiff did not pursue said constitutional claim in a separate action for a declaratory judgment?

"5. Does the Connecticut State Board of Labor Relations have jurisdiction to determine whether the State, as the employer, has committed a prohibited practice by enacting a statute which unilaterally and adversely changes a condition of employment when the statute in question is ordinarily administered by a different state agency which, itself, has no jurisdiction over prohibited practices?"

modified by federal legislation."[2] The state legislature, pursuant to General Statutes § 5-278 (b), approved this agreement on August 13, 1979. Prior to such approval the legislature on June 28, 1979, had enacted Public Acts 1979, No. 79-541, to become effective on January 1, 1980. This act amended the definition of "disabled" in General Statutes § 10-183b (13) from an occupational disability standard to a general disability standard[3] for the purpose of determining eligibility for payments to disabled teachers under General Statutes § 10-183aa. Although the act containing this amendment had been passed by the legislature and signed by

---

[2] These provisions of the collective bargaining agreement are as follows:

"12:11 *Insurance and Retirement Benefits.* Except as specifically modified by this Agreement, state and federal fringe benefits uniformly available to bargaining unit members as of the date of signing this Agreement shall continue to exist during the term of the contract unless specifically modified by federal legislation.

"12:11:1 The retirement plans available to members on the date of this agreement shall be continued . . . ."

It is arguable that the term "benefits uniformly available . . . as of the date of signing this Agreement" can be construed broadly to include the modification of those benefits effectuated by Public Acts 1979, No. 79-541, a duly enacted statute at the time the agreement was executed of which the parties are presumed to have known. *Ciarleglio* v. *Benedict & Co.,* 127 Conn. 291, 293, 16 A.2d 593 (1940). Neither the parties, the SBLR nor the trial court have adopted this interpretation, but have uniformly assumed that this "benefits uniformly available" clause meant that the conditions for eligibility for payments to disabled teachers in force at the time of the agreement would remain unchanged for the duration of the agreement. We need not, therefore, discuss other possible alternative constructions of these provisions of the agreement.

[3] Prior to the effective date of Public Acts 1979, No. 79-541, January 1, 1980, "disabled" was defined for the purpose of the Teachers' Retirement System to mean "(A) for purposes of eligibility for survivor's benefits, inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration; and (B) for purposes of eligibility for disability benefits, permanent inability to render service as a teacher by reason of any medically determinable physical or mental impairment which can be expected to result in death or to

the governor[4] before the collective bargaining agreement was approved, it was omitted from the "supersedence analysis"[5] which was submitted to the legislature pursuant to General Statutes § 5-278 (b) at the time of the vote to approve the collective bargaining agreement, August 13, 1979.

On May 9, 1980, after Public Acts 1979, No. 79-541, had become effective, the plaintiff petitioned the SBLR for a declaratory ruling pursuant to General Statutes § 4-176[6] to determine whether the state, as the employer, had refused to bargain collectively in good faith with the plaintiff concerning the change in the teacher retirement statutes effectuated by Public Acts 1979, No. 79-541, and thus had engaged in a practice prohibited by General Statutes § 5-272 (a) (1) and (4).[7]

be of long-continued and indefinite duration." General Statutes (Rev. to 1979) § 10-183b (10). Subparagraph (b), which pertains to teacher disability benefits, is referred to as an occupational disability standard.

The public act changed this definition as follows: " 'Disabled' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Public Acts 1979, No. 79-541, § 1. This definition is referred to as a general disability standard. See *Solberg* v. *Aetna Life Ins. Co.*, 151 Conn. 637, 638, 201 A.2d 465 (1964).

[4] Public Acts 1979, No. 79-541, was passed by the General Assembly on May 31, 1979, and was signed by the governor on June 28, 1979.

[5] The term "supersedence analysis" has been used by the parties as well as the SBLR to refer to the "request . . . for approval of any provisions of the agreement which are in conflict with any statute or any regulation of any state agency" which must be submitted to the legislature at the time a collective bargaining agreement is to be voted upon. See General Statutes § 5-278 (b).

[6] General Statutes § 4-176 provides in part as follows: "Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings."

[7] General Statutes § 5-272 provides as follows: "(a) Employers or their representatives or agents are prohibited from: (1) Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in sec-

The SBLR dismissed the petition after concluding (1) that it had jurisdiction to determine the question raised; (2) that "one legislature cannot by its enactments control the exercise of the powers of a succeeding legislature";[8] and (3) that the prohibition against unilateral changes in conditions of employment made by state officials does not forbid the legislature from making such changes by statute.[9] Upon the appeal from the SBLR the trial court affirmed its dismissal of the petition as well as its conclusions. The court also held that certain constitutional issues raised by the plaintiff were not properly before it because they had not been raised before the SBLR and also because that agency in any event had no jurisdiction to decide constitutional questions. Both the SBLR and the trial court implicitly assumed that Public Acts 1979, No. 79-541, had modified retroactively the terms of the collective bargaining agreement that the legislature had previously approved. In our view, this assumption was incorrect.

---

tion 5-271 including a lockout; (2) dominating or interfering with the formation, existence or administration of any employee organization; (3) discharging or otherwise discriminating against an employee because he has signed or filed any affidavit, petition or complaint or given any information or testimony under sections 5-270 to 5-280, inclusive; (4) refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit; including but not limited to refusing to discuss grievances with such exclusive representative; (5) discriminating in regard to hiring or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization; (6) refusing to reduce a collective bargaining agreement to writing and to sign such agreement; (7) violating any of the rules and regulations established by the board regulating the conduct of representation elections."

[8] It is not clear how this principle is applicable under the circumstances of this case, where the statute claimed to modify the collective bargaining agreement approved on August 13, 1979, was enacted prior to that date by the same legislature that approved the contract. The vote of approval was the last action taken by the legislature pertaining to this contract or its subject matter.

[9] See footnote 8, supra.

"It is true that statutes existing at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention." *Ciarleglio* v. *Benedict & Co.,* 127 Conn. 291, 293, 16 A.2d 593 (1940); see *State* v. *American News Co.,* 152 Conn. 101, 111–12, 203 A.2d 296 (1964); *Williamson* v. *Massachusetts Bonding & Ins. Co.,* 142 Conn. 573, 116 A.2d 169 (1955). "But into all contracts, whether made between States and individuals or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the preexisting and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force." *West River Bridge Co.* v. *Dix,* 47 U.S. (6 How.) 507, 532, 12 L. Ed. 535 (1848); see *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S. Ct. 145, 77 L. Ed. 360 (1932).

The presumption that parties contract in the light of existing statutes is implemented with respect to collective bargaining agreements with state employees entered into pursuant to § 5-278 (b) by the provision thereof requiring submission to the legislature at the time of its vote upon such an agreement "[a] request . . . for approval of any provisions of the agreement which are in conflict with any statute or any regulation of any state agency . . . ." Such a request has been referred to by the parties as a "supersedence analysis." Unless the legislators are thus informed of those statutes or regulations that conflict with the negotiated agreement, their vote of approval cannot be deemed to modify or suspend such inconsistent provisions of

law for the purpose of the agreement. In providing in § 5-278 (e) that, in any conflict with statutes or agency regulations upon matters appropriate for collective bargaining, the terms of the agreement "shall prevail," the statutory scheme contemplates explicit notice to the legislators of the particular conflicts involved. *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 197, 425 A.2d 1247 (1979). Only in this manner can a vote of approval fairly be deemed to waive or suspend those provisions of law that would otherwise be implied in the contract and override its inconsistent terms. Section 5-278, by imposing the requirement for expressly informing the legislators of conflicts between the agreement and existing statutes or regulations, makes inapplicable the usual rule for ascertaining legislative intent, "that the legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." *Miller* v. *Eighth Utilities District,* 179 Conn. 589, 594, 427 A.2d 425 (1980). With respect to a collective bargaining agreement approved pursuant to § 5-278 (b), unless a particular statute or regulation has been referred to specifically in the documents submitted to the legislature, its terms must necessarily prevail over conflicting provisions of the agreement. *Board of Trustees* v. *Federation of Technical College Teachers,* supra.

The plaintiff does not dispute the finding of the SBLR that the supersedence analysis sent to the legislature when the collective bargaining agreement was approved on August 13, 1979, did not mention any conflict with Public Acts 1979, No. 79-514. The plaintiff maintains, however, that this omission is immaterial, because that statute, though enacted into law on July 28, 1979, did not become effective until January 1, 1980, and therefore "was not legally in existence" at the time the legislature approved the contract.

Although a statute cannot ordinarily be given force before its effective date, the requirement of § 5-278 (b) that the legislature be informed of provisions of the agreement conflicting with any statute or regulation properly applies to a statute duly enacted at the time of contract approval that is to become effective during the term of the agreement. The legislature unquestionably should be made aware of a conflict with a statute that is scheduled to come into force a short time after a collective bargaining agreement has been approved. In this case, if the supersedence analysis had pointed out the difference in treatment of disability claimants in the bargaining unit represented by the plaintiff as compared to other teachers once Public Acts 1979, No. 79-514, became effective, it is quite possible that the legislature would not have voted to approve the agreement but would have returned it for further negotiations in accordance with § 5-278 (b). The requirement that such a conflict be pointed out to the legislature prior to its approval of a collective bargaining agreement assures that a vote of approval, suspending for purposes of the contract any conflicting statutes or regulations, will be had with full knowledge of the consequences. It follows, therefore, that the failure of the supersedence analysis in this case to alert the legislature to the conflict that would arise on January 1, 1980, because of the change in the definition of "disabled" effectuated by Public Acts 1979, No. 79-514, made that amendment applicable to the agreement that had been approved on August 13, 1979, "just as if an express provision to that effect were inserted therein." *Ciarleglio* v. *Benedict & Co.*, supra, 293. "Put another way, a term at variance with law, not approved by the legislature in accordance with General Statutes § 5-278 (b), does not enjoy the preferential position provided for legislatively approved conflicting terms by

§ 5-278 (e), but is rendered a nullity." *Board of Trustees* v. *Federation of Technical College Teachers,* supra, 197.

We conclude, therefore, that there is no factual or legal basis for the plaintiff's petition for a declaratory ruling that the state had engaged in a practice prohibited by § 5-272 by unilaterally modifying a term of the collective bargaining agreement that had previously been approved. No such change in the agreement occurred, because the failure to notify the legislature of the conflict that would arise within the contract period made the modified disability provisions of Public Acts 1979, No. 79-514, which became effective on January 1, 1980, a change contemplated by the contract at the time of its approval. *Ciarleglio* v. *Benedict & Co.,* supra. Accordingly, the trial court properly affirmed the dismissal of the petition by the SBLR and also properly declined to address the constitutional issues the plaintiff sought to raise.

There is no error.

In this opinion the other judges concurred.