[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In these administrative appeals[1] the plaintiffs, classified employees of the state of Connecticut, appeal from the decision of the Employee Review Board ("Board") that the plaintiffs' statutory rights were not violated when the state of Connecticut increased the length of their work day, but failed to adjust the plaintiffs' accrued vacation and sick leave.
This appeal is brought pursuant to the Uniform Administrative Procedures Act (UAPA), General Statutes §§ 4-166, et seq, and 4-183 (j). The plaintiffs are aggrieved by the Board's decision.
The plaintiffs are all employed as Assistant Attorneys General in the classified service of the state of Connecticut. The defendant Board is authorized to adjudicate disputes arising under the State Personnel Act, General Statutes §§ 5-201 and 5-202. The decision of the Board which is the subject of this appeal was the result of a contested hearing pursuant to § 5-202(b) on plaintiffs' grievances. The defendant Attorney General of the State of CT Page 4701 Connecticut (Attorney General) is the plaintiffs' appointing authority under the State Personnel Act; and recorded the plaintiffs' vacation and sick leave time pursuant to §§ 5-247
and 5-250. The defendant Commissioner of the Department of Administrative Services (Commissioner) is responsible for implementing the State Personnel Act. The defendants Attorney General and Commissioner denied plaintiffs' grievance and opposed plaintiffs' position before the Board.
The plaintiffs' statutory claims raise pure questions of law which have not previously been the subject of judicial scrutiny.[2] Thus, the standard of review is broader. "Ordinarily this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies to expound and apply governing principles of law." (Citations and internal quotation marks omitted.) Connecticut Light Power Co. v.Texas-Ohio Power. Inc., 243 Conn. 635, 642-43 (1998).
The case arises from the State's decision to extend the work day of most of its employees from 35 to 40 hours a week and 7 to 8 hours a day. This increase is being implemented over a 4 year period. The work day increased to 7 1/4 hours on July 1, 1995; 7 1/2 on July 1, 1996; 7 3/4 hours on July 1, 1997; and will increase to 8 hours on July 1, 1998. This change was negotiated with many state employee unions pursuant to the State Employee Relations Act § 5-270, et seq. Coincident with the work day increase, the affected employees received a pro rata percentage pay increase (R. Ex. #20, Administrative and Residual Employees collective-bargaining agreement). The plaintiffs are non-unionized managerial and confidential classified employees of the state. Section 5-200 (p) allows the state to grant such non-unionized employees the "right and benefit" of unionized CT Page 4702 employees. The plaintiffs were extended the "right and benefit" of working a longer day for additional compensation. Pursuant to § 5-200 (p) these provisions were approved by the Secretary of the Office of Policy and Management and transmitted to the state legislature.
The plaintiffs have statutory rights to accrue vacation and sick leave on the basis of 1 1/4 work days a month for each calendar month of completed service. Sections 5-247
and 5-250. The days are calculated in hours, pursuant to statute. The problem is and these cases arise from the consequence of accumulating leave when the work day was of a shorter duration, calculating the shorter work day in hours and applying these hours to an extended work day.
The impact of the change can be seen in the example of the plaintiff Hugh Barber who on June 30, 1995, had accumulated 677.5 vacation hours and 1,368 sick leave hours which on June 30, 1995, were recognized as 96.8 days vacation and 195.4 days sick leave. The extension of the work day to 7.25 hours on July 1, 1995 reduced the value to respectively 93.45 and 188.7 days. Those lost days precipitated this action.
A less complicated example might hypothetically be imagined. An employee who had a 0 balance on February 28, 1995, would accumulate 5 days (1 1/4 days per calendar month pursuant to Conn. State Regulations § 5-250) by working continuously during March, April, May and June of 1995. If he chose to take leave on July 1, 1995, as a consequence of the extended day he would be entitled to not 5 days but 4 days and 6 hours of leave.
The plaintiffs' claims are that the Board's decision violates their statutory rights to leave days, constitutional rights to due process of law and the equal protection of the law and is factually inadequate. The court finds that as a matter of law the plaintiffs' statutory rights have been violated and their appeal is sustained.
The state argues that the plaintiffs earned days which were of 7 hours length and should not be credited against the revised work days of 7 1/4 to 8 hours. CT Page 4703
In matters of statutory construction, we are guided by well established principles, paramount among which is the principle that "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations and internal quotation marks omitted.) State v. Spears,234 Conn. 78, 86-87, cert. denied, 516 U.S. 1009 (1995).
In construing the statute the court is to use the ordinary meaning of its terms. A work day is the normal hourly time component which is required by the employer. (Webster's Third New International Dictionary; "the hours or the daily recurring period established by usage or law for work.") The state, as it must, concedes that in other contexts accrued benefits are paid at their value at the time of use rather than value when earned. Vacation, sick pay or personal leave pay is compensated at the employees' current rate of pay, rather than the rate of pay when earned. Thus, employees' benefits reflect pay raises, promotions and cost of living adjustments. The state however characterizes crediting the plaintiffs' claim as a potential windfall. It is rather a common result which should in no way affect the court's construction of the statutes at issue. It is the state that is seeking the bizarre result. An employee with 5 days of accrued leave before July 1, 1995, would only be entitled to paid leave for 4 days and 6 hours on July 1, 1995, and even less for each of the three subsequent years.
The State's position is essentially that the plaintiffs never received days of accrued leave, only hours based-on ; hour increments. This is in direct conflict with the express language and history of the statute.
Sections 5-247 and 5-250 clearly make the day the primary unit of measurement. The State's construction makes the hour the only unit of measurement. The express language of the statute leaves little doubt as to the primary measure of the benefit. "Hourly computation of vacation leave shall not diminish benefit entitlement" appears in § 5-250 and CT Page 4704 identical language appears in § 5-247 relating to sick leave. If any ambiguity in the statute survives such explicit language the legislative history indicates that prior to 1979 the sole reference to computation was "days." In 1979 hourly computation was permitted provided there was no diminishment of entitlement. Public Act 79-621. The purpose of the amendment was articulated by the bill's sponsor, Representative Gardiner Wright:
 There will be no change in employee benefits under this. The purpose of doing that is because our new computer system calculates everything in hours and we are able to calculate employee's benefits, vacations, in terms of hours instead of days in the new system and that's the only reason. We have been assured and we have assured the state employees that this will not increase or decrease anyone's benefits. They will remain exactly as they are at present.
Contrary to the legislative intent, the state is using the hourly computation to decrease benefits. It is inescapable that the reduction in Mr. Barber's vacation accrual from 96.8 to 93.4 days and sick leave from 195.4 days to 188.7 is a diminishment.
The State's position is also in conflict with the State's treatment of personal leave balances under § 5-250
(b). Personal leave entitlements were not diminished upon the extension of the work day on July 1, 1995. Pursuant to a June 12, 1995 directive, Personnel Administrative Memorandum 95-63 (R. Doc. #14 ); personal leave taken after July 1, 1995, would only result in a deduction of 7 hours rather than the 7.25 hours actually excused with pay.
The state argues that the plaintiffs earned a 7 hour day and continue to receive 7 hours. However, it was clearly contemplated that what was earned was a calendar day of compensated leave. Section 5-250 (a) specifically refers to "calendar days" of vacation leave. The State's crimped construction led them to offer, after July 1, 1995, employees, like the plaintiffs, the option of getting a full CT Page 4705 day off but only without the pay raise. This is clearly not the case with other benefits and is inconsistent with reasonable expectations of a calendar day's leave with compensation at the employees rate at the time of leave.
The State's alternative argument is that under § 5-200
(p)[3] the statutory accrual rights were superseded by the Commissioner's submission of the plaintiffs' accrual benefit to the legislature. (See Record #17, "Management Personnel Policy No. 95-1, Leave Accruals for Management and Confidential Employees.") According to the defendants if this order conflicts with the statutory entitlements, the order will control pursuant to § 5-200 (p). While this is generally true, the notice requirements of § 5-200p were not satisfied here.
The order, Policy No. 95-1, R. #11, prospectively adjusts the hourly/day accrual rate to correspond with the increased work day. Effective July 1, 1995, 7.25 hours; July 1, 1996, 7.50 hours; July 1, 1997, 7.75 hours; and July 1, 1998, 8.00 hours. It is cited as superseding §§ 5-247
(a) and 5-250 (a). It supersedes such statutes to the extent it sets hours as the primary measure of leave accrual for leave earned in the period after July 1, 1995. In defining the day as the specific work hours in effect during the transition from the seven to eight hour day, the order has, contrary to §§ 5-247 (a) and 5-250 (a), made the hour the primary unit of measure for the leave benefit for the period after July 1, 1995.
The personnel policy responding to the work day extensions, Management Personnel Policy No. 95-1, does not specifically address the issue of days accrued prior to July 1, 1995, however. In that Policy 95-1 is silent on the issue of accrued sick and vacation leave, it does not supersede §§ 5-247 (a) and 5-250 (a).
Assuming the existence of a conflict between the personnel policy and the statutes, the defendant's arguments fail because our legislature was not notified of the conflict. Section 5-200 (p) requires in pertinent part: "If the secretary [of OPM] approves such order, and such order is in conflict with any provision of the General Statutes, the secretary shall forward a copy of such order to the joint committee of the General Assembly having cognizance of CT Page 4706 labor matters." Though § 5-200 (p) has not been the subject of judicial construction, another supercedence statute for state employees collective bargaining agreements § 5-278 has been the subject of judicial review. "General Statutes § 5-278
(b) implicitly requires that, in order for the legislature to approve or reject' a collective bargain agreement term in conflict with law, the particular contract term must be stated distinctly and correctly by the employer in the transmittal of the contract to the legislature."Board of Trustees v. Federation of Technical CollegeTeachers, 179 Conn. 184, 197 (1979).
 In providing in § 5-278 (e) that, in any conflict with statutes or agency regulations upon matters appropriate for collective bargaining, the terms of the agreement "shall prevail," the statutory scheme contemplates explicit notice to the legislators of the particular conflicts involved. Only in this manner can a vote of approval fairly be deemed to waive or suspend those provisions of law that would otherwise be implied in the contract and override its inconsistent terms. Section 5-278, by imposing the requirements for expressly informing the legislators of conflicts between the agreement and existing statutes or regulations, makes inapplicable the usual rule for ascertaining legislative intent, "that the legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or non action may have on them."
(Citations omitted.) State College AAUP v. State Board ofLabor Relations, 197 Conn. 91, 99 (1985).
Notice provided under § 5-200 (p) would likewise be ineffective unless OPM expressly informed the legislature of conflicts between Policy 95-1 and existing law. Unless specific notice is given, the executive may encroach on the legislative powers of our General Assembly to enact and repeal statutes. Such an outcome would implicate the separation of powers doctrine as set forth in article second
of the Connecticut Constitution.
Here, the record shows that OPM sent a memorandum to CT Page 4707 the joint committee on labor regarding Policy 95-1 and the extension of the work day for state employees beginning on July 1, 1995. (R. Ex. 12.) That memorandum referred to "the expansion of the work week to 40 hours in the course of the next four years," but did not refer to the treatment of accrued leave or any conflict between Policy 95-1 and §§ 5-247
(a) and 5-250 (a). The record does not demonstrate that the legislature was notified of any such conflict. Thus, the presumption is not applicable and §§ 5-247 (a) and 5-250
(a) are not superceded.
The appeal is sustained and is remanded to the board for further proceedings in accordance with this decision to recalculate the hourly value of the sick and vacation leave accrued prior to July 1, 1995.
McWEENY, J.