[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, American Federation of State, County and Municipal Employee, Council 4, Locals 387, 391 and 1565, AFL-CIO, appeals from a March 22, 2000 decision of the defendant, State of Connecticut Board of Labor Relations ("the board"), dismissing its complaint against the defendant, Department of Corrections, State of Connecticut ("DOC"), alleging a failure to bargain in good faith.
On July 2, 1997, the plaintiff filed its complaint with the board. After a hearing before the board and the filing of briefs, the board made the following findings of fact:
 1. The State Department of Correction is an employer within the meaning of the [State Employee Relations] Act [("the Act")].
 2. The Union is an employee organization within the meaning of the Act, and at all material times has represented a bargaining unit of corrections officers employed by the State Department of Correction.
3. Section 5-278 (b) of the Act provides in relevant part:
 . . . [A]ny arbitration award, issued in accordance with section 5-276a . . . shall be filed by the bargaining representative of the employer with the clerks of the House of Representatives and the Senate within ten days after the date on which such agreement is reached or such award is distributed. . . . The General Assembly may reject any such award as a whole by a two-thirds vote of either house if it determines that there are insufficient funds for full implementation of the award. If rejected, the matter shall be returned to the CT Page 13512 parties for further bargaining. . . .
 4. In approximately March of 1994, the Union and the City began negotiations for a successor contract to the collective bargaining agreement which was due to expire on June 30, 1994. In approximately May of 1996, the parties began interest arbitration proceedings pursuant to § 5-276a of the Act. An interest arbitration award was issued on March 31, 1997.
 5. On April 11, 1997, the Office of Labor Relations (OLR) timely submitted the interest arbitration award to the Connecticut General Assembly for approval as required by § 5-278 (b) of the Act. . . .
* * *
 7. On April 29, 1997, the legislature's Office of Fiscal Analysis prepared a Preliminary Fiscal Impact Statement . . . which stated in relevant part:
 It is anticipated that there are sufficient funds in the Reserve Salary Adjustments account to pay for the retroactive costs. . . . However, the costs associated with this award are projected to exceed the level budgeted . . . based on the pattern associated with the Administrative Clerical agreement. . . .
 Due to the fact that many agreements that will require funding . . . have not yet been approved, there are funds within the Reserve for Salary Adjustments account to cover the costs associated with the Corrections award. However, this would leave insufficient funding to cover the costs associated with the remaining agreements which are anticipated to be submitted in the future.
 8. On April 30, 1997, the Appropriations Committee met regarding the interest arbitration award. The House members voted to approve the agreement, but the Senate members did not take a vote. . . . CT Page 13513
 9. On May 7, 1997, the Senate voted 24 to 12 in favor of a motion to reject the interest arbitration award for insufficient funds. Specifically, the Senate Chair of the Appropriations Committee remarked that "we find that over a two year period, there is a $30 million impact on our budget and based on the contracts that are still outstanding and the potential of reopeners, I find that there are insufficient funds to meet this award. . . ."
 10. After the Senate rejected the arbitration award, the matter was returned to the parties for further bargaining. The parties reached full agreement on a successor contract on May 28, 1997. . . .
 11. On June 3, 1997, the negotiated agreement was submitted . . . to the General Assembly for approval. . . .
 12. On June 3, 1997, both the House and the Senate voted to approve the negotiated agreement. . . .
 13. On July 2, 1997, the Union filed the instant complaint.
(Return of Record ("ROR"), Item 8, pp. 2-3.)
Before the board, the plaintiff contended that the DOC had failed to bargain in good faith, in violation of General Statutes § 5-272
(a)(4), because the Senate had not rejected the arbitrated award strictly on insufficient funding grounds. The plaintiff thus argued that the DOC should have treated the award as improperly rejected, comparing the rejection in this instance to an untimely rejection by the Senate. The DOC was therefore obliged to recognize the award as governing; its failure to treat the award as final amounted to a prohibited practice. (ROR, item 4, Brief of Locals 387, 391 1565, Council 4, AFSCME, pp. 3, 6.)
Based on the facts as found, however, the board dismissed the complaint on the ground that only the General Assembly, acting through the Senate, had the authority to determine what constituted "insufficient funds" to implement the award. Further, the board concluded that the DOC had not committed a prohibited practice by failing to implement an interest arbitration award that had been rejected by the Senate. (ROR, Item 8, pp. 3-5.) This appeal followed.[1]
CT Page 13514
"Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act General Statutes § 4-166 et seq. (UAPA) . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) MacDermid, Inc. v.Dept. of Environmental Protection, 257 Conn. 128, 136 (2001).
"Even as to questions of law, the court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.)MacDermid, Inc. v. Dept. of Environmental Protection, supra, 257 Conn. 137.
"Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. . . ." (Citations omitted.) United Parcel ServiceInc. v. Administrator, 209 Conn. 381, 385-86 (1988).
The first issue raised by the plaintiff in this appeal is that the board erred by characterizing the "employer" as the DOC, instead of the State of Connecticut itself (including the state Senate). It relies upon the definition of "employer" in the Act which reads as follows:
 "Employer" means the state of Connecticut, its executive and judicial branches, including, without limitation, any board, department, commission, institution, or agency of such branches or any appropriate unit thereof and any board of trustees of a state-owned or supported college or university and branches thereof, public and quasi-public state CT Page 13515 corporation, or authority established by state law, or any person or persons designated by the employer to act in its interest in dealing with employees, but shall not include the State Board of Labor Relations or the State Board of Mediation and Arbitration.
General Statutes § 5-270 (a).
The plaintiff argues that the use of the words "state of Connecticut" in the statute means that "[t]he Connecticut Senate, obviously, is a part of the State of Connecticut. If the Senate acted illegally, then the employer acted illegally, for the employer (the State) is no longer a passive observer." (Union's Memorandum of Law in Support of their Administrative Appeal, p. 9.)
On the other hand, the DOC argues that the examples of judicial and executive branch agencies and departments following the words "state of Connecticut" indicate that the General Assembly did not intend to include the state Senate within the sweep of its definition. The court agrees with this interpretation. "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions. . . ." (Citations omitted.) Hall v. Gilbert Bennett Mfg. Co., 241 Conn. 282, 303 (1997).
Moreover, this result is in keeping with the statutory scheme set forth in the Act as it relates to duties of the board. In General Statutes § 5-273, the board is given the authority over those sections as specifically set forth in the Act. Section 5-274 of the General Statutes sets forth the manner in which the board is to resolve prohibited practice questions. Section 5-272 (a)(4) establishes that it is prohibited practice for an employer to refuse to bargain collectively in good faith. Section 5-272 (c) continues: "For the purposes of sections 5-270 to 5-280, inclusive, to bargain collectively is the performance of the mutual obligation of the employer . . . and the representative of the employees to meet at reasonable times, including meetings appropriately related to the budget-making process, and bargain in good faith with respect to wages, hours and other conditions of employment . . . or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation shall not compel either party to agree to a proposal or require the making of a concession. "
Such language clearly indicates that the "employer" is the DOC in this instance and does not include the legislature. The legislative history supports the court's conclusion. In 1986, by Public Acts 1986, No. 86-411, § 4, a form of binding arbitration was introduced into the CT Page 13516 Act. In Public Acts 1989, No. 89-349, § 1, a timetable was imposed on the binding arbitration process, especially for awards announced while the legislature was not in session. On the floor of the Senate, Senator Harper remarked as follows about the proposed legislation:
 This bill amends the statutes relative to the submission and approval of arbitration awards resulting from an impasse in state employee collective bargaining.
 The change involved here is essentially to provide some oversight of upcoming arbitration awards during the interim.
32 S. Proc., Pt. 13, 1989 Sess., p. 4472.
 It simply says that in the interim there will be some fiscal oversight allowed of agreements which potentially could have a major fiscal impact on what I have described as a very delicate balanced budget. . . . It's very possible . . . that unless . . . savings [are] realized, by holding the line on the increase in collective bargaining agreement settlements and some of those . . . could very well come to us in the form of arbitration awards, we could very well wind up with a deficit in that account with a major deficiency.
32 S. Proc., Pt. 13, 1989 Sess., p. 4474.
The last relevant amendment to the Act occurred in 1991. By the provisions of Public Acts, Spec. Sess., June, 1991, No. 91-3, one house of the General Assembly may by a two-thirds vote reject a submitted arbitration award.
The legislative history indicates that legislature's role is that of an oversight body[2], and it is not to be considered an employer under the Act. This is a result that is more "rational and effective" in accomplishing the legislative objective than the interpretation suggested by the plaintiff. State v. Burns, 236 Conn. 18, 23 (1996); State v.Tudisca, 62 Conn. App. 796, 800 (2001).
The plaintiff next point is that the board's decision in State ofConnecticut and Board of Trustees for the Connecticut State Colleges, Decision No. 2028 (1981), aff'd, State College AAUP v. State Board ofLabor Relations, 197 Conn. 91 (1985) ("AAUP") mandated that the board consider the validity of the State Senate's rejection of the arbitration CT Page 13517 award. In AAUP the facts, as found by the board, were that the legislature, pursuant to § 5-278 (b), had on August 13, 1979, approved a collective bargaining agreement containing a reference to a definition of disability; prior to this approval on June 28, 1979, the legislature had passed a statute effective in 1980, tightening the definition of disability. On May 9, 1980, the plaintiff union petitioned the board for a declaratory ruling that the state and the trustees for Connecticut state colleges had not bargained in good faith by insisting on applying the restricted definition of disability now effective under the 1979 statute.
The board held that it had jurisdiction to consider the declaratory ruling, but reaching the merits concluded that the 1979 statute, when effective in 1980, had overridden the definition of disability as set forth in the collective bargaining agreement. The Superior Court agreed and dismissed the union's administrative appeal. On appeal to the Supreme Court, however, that court chose not to follow the rationale of the board. The Supreme Court concluded that because the union had failed to alert the General Assembly to the conflict between the June 1979 legislation and the contract language at the time of the approval of the collective bargaining agreement in August 1979, the contract language amounted to "a nullity." State College AAUP v. State Board of LaborRelations, supra, 197 Conn. 101, citing Board of Trustees v. Federationof Technical College Teachers, 179 Conn. 184, 197 (1979).
The board and the courts thus found jurisdiction in the board to consider the relationship between a statute and a collective bargaining agreement adopted in the same session, and for the board to decide whether the statute or a provision in the contract was effective. See also Lieberman v. State Board of Labor Relations, 216 Conn. 253, 259
(1990) ("[T]he parties raised issues challenging the labor board's application of the state's public records management statutes and the freedom of information statutes.") This finding of jurisdiction in AAUP, either under the board's or Supreme Court's analysis, however, does not mean that the board has jurisdiction to consider the plaintiff's allegations that "[t]here is absolutely no evidence in the record that the Senate made a finding that there were insufficient funds." (Union's Memorandum of Law in Support of their Administrative Appeal, p. 21.)
Were the board to resolve this dispute, it would invade the prerogative of the legislature and violate the doctrine of separation of powers. As indicated above, "[t]he fixing of compensation for public employees is a legislative function." Alameda County Employees' Assn. v. County ofAlameda, 106 Cal.Rptr. 441, 449 (Cal.App. 1 Dist. 1973). It is true that the board has properly been delegated certain duties in the binding arbitration process. See Carofano v. Bridgeport, 196 Conn. 623 (1985); CT Page 13518City of Columbus v. State Empl. Rel. Bd., 505 N.E.2d 651 (Ohio Com.Pl. 1985) (discussing the analogous principle for municipal binding arbitration).
At the same time, it would clearly offend separation of powers to allow the board to take up a review of the Senate's reasons for rejecting the arbitration award. On page 21 of its brief, the plaintiff states that the appropriation committee chairman's "finding" of insufficient funds was merely his opinion. According to the plaintiff, the other senators in opposition to the award based their decision on their views of the projected budget, and thus misinterpreted the term "insufficient funds."
To decide this matter as presented by the plaintiff, the board's actions would "border on the creation of laws," City of Columbus v. StateEmpl. Rel Bd., supra, 505 N.E.2d 659, and would constitute an encroachment on the legislative function. Richardson v. Tennessee Bd. ofDentistry, 913 S.W.2d 446 (Tenn. 1995); see also Nielsen v. Kezer,232 Conn. 65, 74 (1995) ("some other branch of government [here, the legislature] has constitutional authority over the subject matter. . . ."
For these reasons, the plaintiff's appeal is dismissed.[3]
Henry S. Cohn, Judge