STATE OF CONNECTICUT *v.* AFSCME, COUNCIL 4,
LOCALS 196, 318, 355, 478, 538, 562, 610 AND 704
(5373)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 12, 1987—decision released February 16, 1988

*J. William Gagne, Jr.,* for the appellant (defendant).

*Brian J. Comerford,* assistant attorney general, with
whom, on the brief, were *Joseph I. Lieberman,* attor-
ney general, and *Robert E. Walsh,* assistant attorney
general, for the appellee (state).

O'CONNELL, J. The defendant union appeals from the
judgment of the trial court vacating an arbitrator's
award in an employment dispute. The award upheld
a union member's grievance concerning the termina-
tion of her employment by her employer, the state of
Connecticut. We find no error.

The court found the following facts. The plaintiff
state of Connecticut and the defendant union had a col-
lective bargaining agreement in force which outlined

the terms of employment, termination and grievance procedures. On or about December 18, 1984, a member of the union (grievant) filed a grievance against the state concerning her termination as an employee of Mattatuck Community College (college).

The grievant, a payroll clerk, was first hired as a provisional employee on November 28, 1983.[1] On August 28, 1984, after passing the competitive examination for the payroll clerk position, she was appointed a permanent employee. The grievant's employment was terminated on January 17, 1985, and, thereafter, the union, on her behalf, filed a grievance seeking to determine whether the termination was for "just cause." The state contested the arbitrability of the grievance.

Under the collective bargaining agreement, dismissal of a permanent employee during or at the end of a six month probationary "working test period" was not a grievable or arbitrable action; conversely, those employees who satisfactorily completed the working test period could only be dismissed for just cause, an arbitrable issue. On July 10, 1985, an arbitrator determined that the grievance was arbitrable, upheld the grievance, required the grievant to be reinstated to her position, and paid back wages. The arbitrator found that because the grievant's supervisors had erroneously informed the grievant that her working test period had ended when it had in fact just begun, the state had waived its right to terminate the grievant's employment without just cause. The state appealed to the Superior Court, where its motion to vacate the award was granted on the grounds (1) that the arbitrator exceeded her authority in determining that the dispute was arbitrable, (2) that the arbitrator improperly found that the state

---

[1] Article I, § 2 (d) of the bargaining agreement defines a provisional employee as "an employee who has been appointed to a permanent position pending State examination or examination results."

had waived its rights under the bargaining agrement, and (3) that the arbitrator did not draw the essence of the award from the agreement itself.

The defendant union claims error in, inter alia, the trial court's granting of the plaintiff's application to vacate the award, and its denial of the union's counter-application to confirm. Because we agree with the trial court's holding that the arbitrator exceeded her authority in determining that the dispute was arbitrable, we need not address the merits of the award itself.

Our role in reviewing arbitration awards is very limited. "Arbitration affords a contractual remedy designed to expedite, in an informal setting, the resolution of disputes. *Daginella* v. *Foremost Ins. Co.,* 197 Conn. 26, 33, 495 A.2d 709 (1985). Because of our respect for the autonomy of the arbitration process, which requires only minimal judicial intrusion, we will not disturb an arbitration award unless it clearly falls within the proscriptions of General Statutes § 52-418." *State* v. *Connecticut Council 4, CEU, AFSCME,* 7 Conn. App. 286, 289, 508 A.2d 806 (1986). General Statutes § 52-418 (a) provides in pertinent part that "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Generally, when an award is challenged pursuant to General Statutes § 52-418, the reviewing court is limited to comparing the award with the grievant's submission to the arbitrator. See *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 583, 519 A.2d 1 (1986). If the award conforms to the submission it will not be vacated. Id. We recently held, however, in *American Fabrics Co.* v. *United Textile Workers of America,* 12 Conn. App. 642, 646, 533 A.2d 579 (1987), that in limited circum-

stances a court will broaden its review of an arbitrator's decision: "These circumstances are where a party claims 'that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement . . . .' [*Board of Education* v. *Local 818*, 5 Conn. App. 636, 640, 502 A.2d 426 (1985)]. In such a case, 'this court will review the award . . . to determine whether it "draws its essence from the collective bargaining agreement." ' Id., quoting *United Steelworkers* v. *Enterprise Wheel & Car Corporation*, [363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)]."

· The claims in this appeal warrant this broader standard of review, as they attack the arbitrator's ability to draw the essence of her award from the collective bargaining agreement.[2] Applying this broadened review, we conclude that the arbitrator failed to draw her award from the essence of the bargaining agreement in finding that the grievance was arbitrable, and therefore exceeded her powers pursuant to General Statutes § 52-418.

A collective bargaining agreement ratified by state employees contains two types of terms: (1) the express terms contained in the agreement itself; and (2) all applicable state statutes and regulations which constitute implied terms of the agreement. *State College AAUP* v. *State Board of Labor Relations*, 197 Conn.

[2] The issues are comprehensively framed by the statement of issues contained in the state's brief which provides:

"A. Did the Superior Court err in ruling that an arbitrator's decision is subject to judicial review under [General Statutes] § 52-418, with respect to the fidelity of the arbitrator to her obligation to issue an award which draws its essence from the collective bargaining agreement and which does not conflict with state statutes or regulations?

"B. Did the Superior Court err in its conclusion that the arbitrator in the instant case had exceeded her powers by her finding that the state of Connecticut had waived the requirement that the grievant . . . serve a six month working test period commencing with the date of her appointment from the competitive list and by ruling that the grievance was arbitrable?"

91, 98–99, 495 A.2d 1069 (1985). If a union representing state employees wishes to include in its bargaining agreement terms which contradict existing statutes or regulations, it must obtain express approval from the legislature to allow the statutes or regulations in question to be superseded.[3] See General Statutes § 5-278 (b) and (e); *State College AAUP* v. *State Board of Labor Relations,* supra; *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 190–91, 425 A.2d 1247 (1979). In the present case, both the applicable state regulation and the applicable section of the agreement use the identical mandatory language in establishing the commencement date of the working test period for employees, such as the grievant, who are appointed to permanent positions in the state civil service; "Each appointee to a permanent position in the classified service *shall* serve a working test period. Such working test period *shall* begin on the date of appointment from the employment list, if the position is competitive. Otherwise, the working test period shall begin on the date of the original permanent position."[4] (Emphasis added.) Regs., Conn. State Agencies § 5-230-1; Article XII, § 2 of the collective bargaining agreement.

The express terms of Article XII, § 2 of the agreement in the present case additionally provide that "[t]he Working Test Period for classes covered by this Agreement shall be six (6) months." The grievant received her permanent appointment on August 28, 1984. Thus, her six month working test period would have expired

[3] We note, for example, that the requirement contained in General Statutes § 5-230, that the working test period range in duration from three months to one year, was expressly modified by the collective bargaining agreement to a duration of six months, and was expressly approved by the legislature, as noted in the supersedence appendix to the agreement. We note also, that the supersedence appendix fails to indicate a change in the commencement date of employee working test periods.

[4] It is not disputed that the position is "a permanent position in the classified service," to which the language quoted in the text would apply.

on February 27, 1985. She was terminated on January 17, 1985, well within her working test period. Pursuant to Article XV, § 11 (a) of the agreement, the dismissal of the grievant before completion of her working test period does not constitute a grievable dismissal. Applying the express language of the agreement as well as the implied language of the applicable regulation, it is clear that the arbitrator exceeded her authority in determining that the grievance was arbitrable.

The arbitrator justified her finding by stating that the grievant's superiors applied the time served by the grievant as a provisional employee toward the mandatory six month working test period. She reasoned that other state bargaining units allowed this practice under "clauses" contained in their collective bargaining agreement, and that "[t]he College simply extended this same benefit to [the grievant], *even though she was covered by a different agreement.*" (Emphasis added.) The fallacy in this reasoning is apparent on its face. Stating that the action of the college was justified by the terms of another bargaining agreement, when this agreement fails to contain terms which would justify the arbitrator's conclusion, is a clear example of an award which is inherently inconsistent with the underlying collective bargaining agreement. See *Board of Education* v. *Local 818,* supra, 640. "When the arbitrator's words manifest an infidelity to this obligation [to draw its essence from the agreement], courts have no choice but to refuse enforcement of the award." *United Steelworkers* v. *Enterprise Wheel & Car Corporation,* supra, 597.

We also note that the arbitrator's finding, that the grievance was arbitrable, conflicted with established principles of public policy relating to public sector employment. " 'The law provides for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness have

been determined by examination . . . .' " *Resnick* v. *Civil Service Commission,* 156 Conn. 28, 33, 238 A.2d 391 (1968).[5] It is mandatory that every requirement of the civil service law be followed; substantial compliance with its requisites is insufficient. See *Jones* v. *Civil Service Commission,* 175 Conn. 504, 510, 400 A.2d 721 (1978); *Resnick* v. *Civil Service Commission,* supra, 32–33. The good faith of the parties will not justify waiving the stringent application of hiring prerequisites in civil service employment matters. "Strict compliance is necessarily required to uphold the sanctity of the merit system . . . good faith of the parties will not validate illegal appointments, nor will continued employment in an invalidly obtained position." (Citations omitted.) *Cassella* v. *Civil Service Commission,* 202 Conn. 28, 35, 519 A.2d 67 (1987). "Parties cannot expect an intervening arbitral award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." *State* v. *Council 4, CEU, AFSCME,* supra, 290; see *Board of Trustees* v. *Federation of Technical College Teachers,* supra, 195.

We conclude that the arbitrator wrongly determined that the termination of the grievant was an arbitrable matter.

There is no error.

In this opinion the other judges concurred.

---

[5] Article XII, § 1 provides in pertinent part that: "The Working Test Period shall be deemed an extension of the examination process."