## CLAIROL, INC. v. ENERTRAC CORPORATION (15402)

Lavery, Spear and Glass, Js.

Argued October 29, 1996—officially released March 18, 1997

*Lawrence J. Golden,* for the appellant (defendant).

*Ernest J. Mattei,* with whom, on the brief, was *Philip S. Wellman,* for the appellee (plaintiff).

GLASS, J. The principal issue in this case is whether it was improper for the trial court to grant the application of the plaintiff, Clairol, Inc. (Clairol), to vacate an arbitration award in favor of the defendant, Enertrac Corporation (Enertrac), pursuant to General Statutes § 52-418 (a) (3).[1] The application was granted on the basis of a finding that Clairol had been denied a full and fair hearing before the arbitration panel. Enertrac claims (1) that the trial court did not correctly apply the presumption that arbitration awards should be sustained and that arbitration proceedings were properly conducted, and (2) that the trial court improperly failed to seek an articulation or explanation from the arbitration panel. We reverse the judgment of the trial court.

The facts relevant to the disposition of the issues are as follows. On December 7, 1988, Clairol entered into a written construction contract with Enertrac for Enertrac to design and construct a cogeneration facility for use by Clairol in its manufacturing business in Stamford. Disputes ensued concerning performance by both parties under the agreement. Pursuant to article 10.1 of the contract, "[c]laims, disputes and other matters

---

[1] General Statutes § 52-418 (a) provides in pertinent part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects . . . (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ."

in question between the parties . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . ." Article 10.3 of the agreement provides that "[t]he award rendered by arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction."

On November 19, 1990, Clairol submitted the disputes between the parties to arbitration. Enertrac filed a counterclaim. The arbitration hearings commenced on May 4, 1992. Thereafter, more than twenty hearings were held or scheduled over a period in excess of two years.

During the arbitration hearings, Enertrac introduced the testimony of two witnesses. Enertrac's first witness was Robert Reilly, Enertrac's president who was involved with the business aspects of the project. A second witness for Enertrac was George Thompson, an engineer and Enertrac's designated expert.

Thompson's direct examination was concluded, but cross-examination was deferred to a later date. In a letter to the American Arbitration Association, counsel for Enertrac stated, inter alia: "Should Enertrac not be able to make Mr. Thompson available in order to conclude these hearings, then Mr. Thompson's direct testimony should be stricken."

Clairol requested that the arbitration panel strike the direct testimony of Thompson and dismiss the counterclaim of Enertrac, both of which requests the arbitration panel formally denied on January 10, 1994. Additionally, on March 24, 1994, the panel decided that it would disallow Enertrac's request to withdraw Thompson's testimony voluntarily. The spokesperson for the panel stated: "With respect to the voluntary withdrawal of Mr. Thompson's testimony, as you know in our arbitration proceedings here, we are the ultimate final decision

makers with respect to relevancy and materiality, and just how much [weight], if any, is given to any exhibits or oral documentary or oral testimony that comes before the panel. We are going to approach the testimony of Mr. Thompson in the same fashion. Whatever relevancy or whatever [weight] the direct examination may have; it may be zero, it may be negative. That is the way we are going to approach it. So we are going to deny your voluntary request to strike that testimony. And we will assign it our own [weight] or relevancy or materiality in our ultimate deliberations on a decision."

At the hearing on May 16, 1994, Clairol renewed its requests to strike the direct testimony of Thompson and to dismiss Enertrac's counterclaim. These requests were considered and the spokesperson for the panel stated that the panel would "take a very hard look at assigning the appropriate weight" to Thompson's testimony, "ranging from no weight whatsoever to possibly negative weight." The panel also indicated again that it was not going to dismiss Enertrac's counterclaim. Clairol then decided to introduce testimony and exhibits to rebut Thompson's testimony. Subsequently, the hearings closed.

On March 27, 1995, the arbitration panel issued a unanimous written award. The panel awarded each party a small portion of its claim and assigned nearly all of the administrative costs of the arbitration to Clairol. The award also provided that Clairol would be liable to Enertrac for all costs that Enertrac owed to the manufacturer of the cogeneration equipment.

On March 31, 1995, counsel for Clairol sent a letter to the arbitration association requesting a clarification by the arbitrators as to the basis for their decision, including an explanation of the underlying award and how the arbitrators reached their decision on Clairol's claim and Enertrac's counterclaim. The arbitration

association responded by letter dated April 4, 1995, in which it refused Clairol's request to provide clarification without first obtaining the consent of both parties to reinstate the authority of the arbitrators. The letter also indicated that "[a]n arbitration award is considered final when rendered and the arbitrator's authority ceases thereafter." In a letter to the arbitration association dated April 10, 1995, Reilly, Enertrac's president, refused to consent to the reinstatement of the authority of the arbitrators.

On April 24, 1995, Clairol filed an application in the trial court to vacate the award based on the claims that the arbitrators had denied Clairol's right to cross-examine Thompson, had refused to vacate or deny Enertrac's counterclaim because of Enertrac's failure to produce Thompson for cross-examination, and had issued an award not supported by the complete testimony of Thompson, which testimony was pertinent and material to the resolution of the parties' controversy. On October 25, 1995, the trial court granted the application to vacate the award. The trial court found that Enertrac "does not contest that Thompson was not made available for cross-examination. Furthermore, [Clairol] has provided a ruling of the arbitrators denying [Clairol's] motion to strike Thompson's direct testimony. [Clairol] was deprived of its absolute right of cross-examination and a full and fair hearing."

Enertrac filed a motion for articulation on January 18, 1996. This motion was denied. A motion for review was filed with the Appellate Court on February 23, 1996. This court granted the motion for review, but denied the relief requested.

Enertrac first claims that the trial court did not correctly apply the presumption that arbitration awards should be sustained and that the arbitration proceedings were properly conducted. We have been loath to

intervene judicially and to interfere with the parties' voluntary agreement to settle their disputes by arbitration. *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987). Because arbitration is such a valuable and commendable tool in alternative dispute resolution, judicial intervention is the exception rather than the rule. See id.

"We have stated repeatedly that judicial review of arbitration awards is limited in scope . . . . *Metropolitan District Commission* v. *AFSCME, Council 4*, 35 Conn. App. 804, 807–808, 647 A.2d 755 (1994). Our courts have wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, [supra, 203 Conn. 145]; see also *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989). Judicial review of arbitration awards is, therefore, limited in scope by § 52-418 and our courts will not disturb an arbitration award unless it clearly falls within the proscriptions of [that statute]. . . . *State* v. *AFSCME*, 13 Conn. App. 461, 463, 537 A.2d 517 (1988); see also *State* v. *Connecticut Employees Union Independent, Inc.*, 33 Conn. App. 737, 740, 638 A.2d 619 (1994).

"In addition, [t]he party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it falls within the proscriptions of § 52-418 of the General Statutes . . . will the determination of an arbitrator be subject to judicial inquiry. . . . *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 145–46; see also *Norwich Roman Catholic*

*Diocesan Corp.* v. *Southern New England Contracting Co.*, 164 Conn. 472, 476, 325 A.2d 274 (1973). [A] court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 145; see also *Diamond Fertiliser & Chemical Corp.* v. *Commodities Trading International Corp.*, 211 Conn. 541, 547, 560 A.2d 419 (1989); *Norwich Roman Catholic Diocesan Corp.* v. *Southern New England Contracting Co.*, supra, 476. Absent a showing of perverse misconstruction [of the law] or positive misconduct . . . the arbitrator's determination is not subject to judicial inquiry. *Twin Towers Associates* v. *Gilbert Switzer & Associates*, 4 Conn. App. 538, 540, 495 A.2d 735, cert. dismissed, 197 Conn. App. 811, 499 A.2d 61 (1985), citing *Schwarzschild* v. *Martin*, 191 Conn. 316, 327, 464 A.2d 774 (1983)." (Internal quotation marks omitted.) *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 37 Conn. App. 1, 5–6, 654 A.2d 384 (1995).

Article 10.3 of the parties' agreement provides that "the award rendered by arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction."

The trial court found that the "arbitration award may only be vacated if the arbitrators' refusal to afford [Clairol] the opportunity to cross-examine Thompson deprived [Clairol] of a full and fair hearing." We conclude that Clairol was not deprived of a full and fair hearing.

We first note that the alleged lack of opportunity to cross-examine a witness occurred in a proceeding before an arbitration panel in a private, unrestricted and consensual arbitration, not in a jury or court trial and, therefore, cases such as *Commercial Union Ins.*

*Co.* v. *Frank Perrotti & Sons,* 20 Conn. App. 253, 262, 566 A.2d 431 (1989), are not applicable.

"[A] court or hearing officer has the discretion to choose among three options when a witness has testified on direct examination and subsequently becomes unavailable for cross-examination: declare a mistrial; strike the direct testimony; or allow the direct testimony to stand." *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities,* 237 Conn. 209, 222, 676 A.2d 844 (1996), citing C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.4.3, p. 47. In the present case, the arbitration panel chose to allow the direct testimony to stand. Clairol's application to vacate the arbitration award alleged that the arbitrators had both committed misconduct; see General Statutes § 52-418 (a) (3); and exceeded their powers; see General Statutes § 52-418 (a) (4); in permitting the testimony that was not subject to cross-examination to be admitted. On appeal, however, Clairol, while citing both subsections of the statute, limits its argument to the former. We, therefore, consider whether the panel's decision constituted misconduct under § 52-418 (a) (3).

Section 52-418 (a) (3) provides that the court shall vacate an arbitration award "if the arbitrators have been guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ." Our Supreme Court has held that "we decline to interpret § 52-418 (a) (3) as mandating that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct." *O & G/ O'Connell Joint* v. *Chase Family Ltd. Partnership No. 3,* supra, 203 Conn. 149. "[A]rbitrators are accorded substantial discretion in determining the admissibility of evidence, particularly in the case of an unrestricted submission, which relieve[s] the arbitrators of the obligation to follow strict rules of law and evidence in

reaching their decision. . . . Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. . . . This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation. Moreover, arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules. . . .

"To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires *more than a showing that an arbitrator committed an error of law.* . . . Rather, a party challenging an arbitration award . . . must prove that, by virtue of an evidentiary ruling, he was *in fact* deprived of a full and fair hearing before the arbitration panel." (Citations omitted; emphasis added; internal quotation marks omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 148–49. In addition, it must prove that as a result of the improper ruling, it suffered substantial prejudice. *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 237 Conn. 209. A trial court reviewing an arbitration award, therefore, must consider all of the evidence placed before it concerning the alleged error in order to determine whether the challenging party has proved that the alleged error, *in fact*, denied it a full and fair hearing. Id. In reviewing the trial court's decision, an appellate court must determine whether, on the basis of the record before it, the trial court reasonably could have concluded that the challenging party was, *in fact*, denied such a full and fair hearing.

In the present case, we conclude that no misconduct by the arbitration panel occurred. The record before us contains certain portions of the transcript of the arbitration proceedings that were before the trial court indicating that Clairol was denied the opportunity to cross-examine Thompson, and Enertrac has not disputed this fact. On the basis of that fact, the trial court concluded as a matter of law that Clairol, as a party to an arbitration hearing, was denied a full and fair hearing and, therefore, vacated the award. The court, however, failed to consider whether, *in fact*, a full and fair hearing was denied because Clairol suffered substantial prejudice by the lack of cross-examination.

To determine whether that Clairol was, in fact, denied a full and fair hearing, the court would have had to review a complete transcript of the arbitration proceeding, and, in particular, the transcript of Thompson's testimony. We note that Clairol put before the trial court a minimal record that failed to include the transcript of Thompson's testimony. Absent that transcript, it was impossible for the trial court to determine whether any of his testimony was detrimental to Clairol. Moreover, the transcript of all other witnesses would have been necessary to determine whether Thompson's testimony was merely duplicative, or whether the other testimony impeached or explained his testimony, rendering it harmless to Clairol. Our review of the record indicates that no such transcript was provided to the trial court.

Although we do not have transcripts of testimony, we do know that Clairol produced an additional witness to refute the testimony of Thompson. Also, the panel, during the colloquy on the motion to strike, stated: "Whatever relevancy or whatever [weight] the direct examination may have; it may be zero, it may be negative. That is the way we are going to approach it." The panel also stated that it would "take a very hard look at assigning the appropriate weight" to Thompson's

testimony, "ranging from no weight whatsoever to possibly negative weight."

We conclude that the trial court did not have before it an adequate record on which to determine that the lack of opportunity to cross-examine Thompson constituted a denial of a full and fair hearing. It is difficult to substantiate a deprivation of Clairol's right to a full and fair hearing when the panel itself has stated that the testimony of Thompson would have either no effect or a negative effect on Enertrac's position. Thus, in fact, the lack of the cross-examination appears to have benefited Clairol. The trial court, therefore, could not reasonably have found that the arbitration panel committed misconduct that deprived Clairol of a full and fair hearing. We, therefore, conclude that Clairol failed to meet its burden of proving that the decision of the arbitration panel violated § 52-418 or procedurally violated the parties' agreement. The decision of the arbitration panel is, therefore, not subject to further judicial review, and the presumption in favor of upholding the arbitration award must be applied.

The record does not support the conclusion of the trial court that Clairol "was deprived of its absolute right of cross-examination, and a full and fair hearing."

Our disposition of Enertrac's first issue concerning cross-examination makes it unnecessary to consider Enertrac's second issue concerning the trial court's failure to seek an articulation or explanation from the arbitration panel of its action.

The judgment is reversed and the case is remanded with direction to render judgment denying the plaintiff's application to vacate the arbitration award.

In this opinion the other judges concurred.