JAMES STUTZ *v.* HORACE SHEPARD ET AL.
(SC 17532)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

---

Argued February 6—officially released July 11, 2006

*A. Reynolds Gordon*, with whom was *Frank A. DeNicola, Jr.*, for the appellant (plaintiff).

*James T. Shearin*, with whom, on the brief, was *Brian C. Roche*, for the appellee (defendant Southport Athletic Club, Inc.).

*Opinion*

BORDEN, J. The dispositive issue in this appeal is whether the trial court improperly denied the plaintiff's application[1] to vacate an arbitration award of attorney's fees. The plaintiff, James Stutz, appeals[2] from the judgment of the trial court denying his application to vacate and granting the application of the defendant Southport Athletic Club, Inc.,[3] to confirm the arbitration award. The plaintiff claims that, based on the record of the arbitration proceeding he presented to the trial court, the court improperly denied his application to vacate because the arbitrator committed clear error by: (1)

---

[1] The plaintiff's application to vacate was brought pursuant to General Statutes § 52-418 (a), which provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The named defendant, Horace Shepard, is a director of the Southport Athletic Club, Inc. Shepard, the other individual directors of the corporation, and the corporation itself, were all named in this shareholder derivative action brought by the plaintiff, who is a stockholder of the corporation. Hereafter, for purposes of convenience, all references in this opinion to the defendant are to the Southport Athletic Club, Inc.

reducing the plaintiff's attorney's fees by 60 percent due to the lack of novelty and complexity of the shareholder derivative suit brought by the plaintiff; (2) reducing the plaintiff's attorney's fees by $24,896 for failing to comply with the requirements of General Statutes § 33-722;[4] and (3) failing to consider the risk borne by the plaintiff's counsel in taking on the litigation as an enhancing factor to the value of the arbitration award. We conclude that the plaintiff has failed to furnish us with an adequate record to review his claims. Accordingly, we affirm the judgment.

The plaintiff served a demand[5] upon the defendant's board of directors, claiming that the defendant's employee compensation plan was flawed and had resulted in the payment of inadequate shareholder dividends. Prior to the expiration of the ninety day waiting period required by § 33-722, the plaintiff also filed in the trial court a shareholder derivative complaint on behalf of the corporation. Ultimately, the parties entered into an arbitration agreement that the trial court approved. The arbitration proceeded in two phases:

[4] General Statutes § 33-722 provides: "No shareholder may commence a derivative proceeding until: (1) A written demand has been made upon the corporation to take suitable action; and (2) ninety days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety-day period."

[5] In the context of a shareholder derivative dispute, a "demand" is a mechanism for a shareholder to voice his objection regarding the management of a corporation and place the board of directors on notice of his complaints prior to the filing of a formal shareholder derivative lawsuit. "The purpose of requiring a precomplaint demand is to protect the directors' prerogative to take over the litigation or to oppose it. . . . Thus, the demand requirement implements the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." (Citations omitted; internal quotation marks omitted.) *Kamen* v. *Kemper Financial Services, Inc.*, 500 U.S. 90, 101, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991).

phase I addressed the substantive merits of the plaintiff's claims; phase II resolved the plaintiff's claims for attorney's fees and expenses. The arbitrator first issued his phase I decision on the merits and found in favor of the plaintiff.[6] That award was confirmed by the trial court without objection from the defendant and is not a subject of this appeal.

Thereafter, following a separate hearing with witnesses' testimony, documentary exhibits, and oral argument by the parties, the arbitrator issued his phase II decision, and awarded the plaintiff an "admittedly subjective" amount of $50,000 in legal fees and $75,000 in expenses. Citing the arbitrator's failure to articulate the basis for the "admittedly subjective" attorney's fee award of $50,000, the plaintiff filed an application to vacate the arbitrator's phase II award. The trial court granted that application, found that, in the absence of an articulation, the arbitrator's phase II award was "clearly erroneous," and remanded the case to the arbitrator for further proceedings. Subsequently, following another hearing with documentary exhibits and oral argument, the arbitrator issued an articulation of his phase II decision and awarded the plaintiff $50,331.60 in attorney's fees. The plaintiff once again filed an application to vacate the arbitrator's award pursuant to General Statutes § 52-418 (a) (4). The trial court denied the plaintiff's application. This appeal followed.

The following facts are relevant to our analysis of the plaintiff's claims. The defendant is a corporation

---

[6] With respect to the phase I proceeding, the arbitrator concluded that the existing incentive compensation plan was no longer appropriate, structurally flawed, and in need of revision in light of the defendant's then existing financial situation, and also concluded that the existing dividends paid to the shareholders were inadequate. Additionally, the arbitrator restructured the compensation and bonus plan by reducing employee bonuses to no more than 30 percent of profits and requiring that the annual shareholder dividend not go below the greater of $4 per share or 35 percent of after tax net income.

with 9852 shares of stock outstanding, 100 shares of which are owned by the plaintiff, who is also a former member of the defendant. As set forth in the demand served upon the defendant's board of directors, the plaintiff challenged the defendant's compensation plan because employees were paid below market wages in exchange for the opportunity to participate in a bonus pool tied to the corporation profits. The plaintiff alleged that, as the financial success of the defendant increased, the bonus pool and eventual disbursement of funds as employee compensation grew to the point that it resulted in a disproportionate drain on shareholder dividends.

In his shareholder derivative complaint, the plaintiff sought: (1) recovery of all payments made under the compensation plan from 1995 to the present; (2) money damages from the individual directors; and (3) a declaratory judgment that all past payments under the compensation plan were illegal. In response to the demand and shareholder derivative suit filed by the plaintiff, the defendant appointed a special litigation committee (committee) to investigate the plaintiff's challenges to its employee compensation system. After an extensive investigation, the committee concluded that the defendant's compensation plan had been properly approved by the shareholders and that the compensation paid to employees under the plan had been both fair and appropriate. Accordingly, the committee concluded that the plaintiff's action was without merit and should be dismissed. The committee also concluded, however, that the defendant's board of directors should review the plan in light of the defendant's increasing financial success and determine whether profits had increased for reasons other than employee performance. To enable this assessment, the committee recommended that a specialist in compensation be retained to assist the defendant in preparing written criteria to determine

whether the entire available bonus pool should be distributed as employee compensation.

Upon receiving the committee's written report, the plaintiff objected to its conclusions on the merits of his claims and elected to go forward with his lawsuit. In response, the defendant did not immediately design a new compensation plan and dividend policy pursuant to the committee's recommendation. Instead, the parties entered into an arbitration agreement in order to resolve the issues of compensation and dividends outlined in the committee's report. Paragraph ten of the parties' arbitration agreement provides as follows: "Notwithstanding the foregoing, the [p]arties may seek pursuant to General Statutes §§ 52-417, 52-418, and/or 52-419 judicial orders confirming, vacating and/or modifying any arbitration award . . . . The parties further agree that any arbitration award regarding expenses (including attorneys fees) that enters pursuant to paragraph [six] may be vacated upon a determination by the [c]ourt that the fee award was *clearly erroneous* either as to entitlement and/or amount." (Emphasis added.)

At the phase II proceeding, the arbitrator received substantial briefing on the issue of attorney's fees, reviewed documentary exhibits, and heard testimony from witnesses. By mutual agreement, the parties did not create a written transcript of the phase II proceeding, and, consequently, a transcript of the testimony heard and arguments made at that hearing is not a part of the record before us on appeal.[7] Ultimately, the arbitrator concluded that the plaintiff's requested fee was not warranted because the benefits conferred upon the defendant were unquantifiable and the cost of the plaintiff's derivative suit had a significant economic

---

[7] At oral argument before this court, the defendant noted, and the plaintiff did not dispute, that three of the authors of the committee report analyzing the plaintiff's claims, including the complexity of his case, testified before the arbitrator during the phase II proceeding.

impact on the shareholders of the corporation. Consequently, the arbitrator awarded the plaintiff $75,000 in expenses[8] and $50,000 in legal fees.

Subsequently, the plaintiff sought to vacate the award in the trial court. The trial court remanded the phase II award for further articulation on the limited basis that the arbitrator had not specifically acknowledged the plaintiff's stated fee estimate, or lodestar,[9] and had not explained the reason for the deviation from that amount. The parties submitted additional briefs and an additional hearing was held before the arbitrator. Once again, by mutual agreement of the parties, no transcript was created of the proceeding, and, consequently, no transcript of the hearing is part of the record before us on appeal. The arbitrator issued a further articulation of his phase II award on June 30, 2004.

The arbitrator's June 30, 2004 articulation of his original phase II decision recognized the plaintiff's stated fee estimate of $150,725. The arbitrator concluded that the hourly rates of the plaintiff's counsel were reasonable. He found, however, that a reduction of $24,896 in the total fee was necessary because the plaintiff had disregarded the ninety day waiting period required by § 33-722, thus leading to the creation of extensive unnecessary expenditures. Additionally, the arbitrator stated that a further 60 percent reduction in the total fee was necessary due to a lack of novelty and complexity in the litigation, which resulted in a total award of $50,331.60 in attorney's fees to the plaintiff.

The plaintiff once again applied to vacate the arbitrator's award, based on the rationale that the plaintiff

---

[8] The plaintiff does not challenge the $75,000 portion of the arbitrator's award set aside to compensate the plaintiff for expenses incurred as a result of the litigation.

[9] The "lodestar" component of an attorney's fee is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley* v. *Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

would have suffered irreparable harm if he had complied with the requirements of § 33-722. Specifically, the plaintiff claimed that the corporation would have lost an additional $200,000 in bonuses set to be paid to the defendant's employees well before the ninety day waiting period would have expired. Additionally, the plaintiff argued that the arbitrator's June 30, 2004 decision was not so much an articulation of the arbitrator's prior award as it was a new rationale implemented to arrive at a predetermined fee amount.

The trial court denied the plaintiff's application. The trial court ruled that the plaintiff had failed to demonstrate that it was clearly erroneous for the arbitrator to conclude that the plaintiff had prematurely commenced the litigation in violation of § 33-722, and that the litigation was not unusually novel or complex. To the contrary, the trial court found that "the arbitrator, by his articulation, [had] made what he himself [originally] described as an admittedly subjective amount . . . now fully articulated both as to the amount and the derivation of that amount." (Internal quotation marks omitted.) Furthermore, the trial court concluded that, in order to vacate the arbitrator's award on remand, the court would necessarily have to substitute its judgment for that of the arbitrator, and that there was not sufficient evidence before the court to allow it to conclude that the arbitrator had committed clear error.

The plaintiff claims that it was clearly erroneous for the arbitrator to: (1) adjust the stated lodestar due to the litigation's lack of novelty and complexity; (2) recalculate his estimated attorney's fees due to the plaintiff's failure to comply with the requirements of § 33-722; and (3) decline to enhance the plaintiff's attorney's fees due to the contingent risk associated with plaintiff's counsel taking on the litigation. Because the plaintiff has failed to sustain his burden to furnish an adequate record on appeal, we are unable to resolve the merits of his claims.

We first note the standard of review that governs this case. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of [the court's] judicial review of the award is delineated by the scope of the parties' agreement." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *Dept. of Transportation*, 273 Conn. 746, 754–55, 873 A.2d 155 (2005). Additionally, "[t]his court has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . [Finally] [t]he party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it . . . ." (Citations omitted; internal quotation marks omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145–46, 523 A.2d 1271 (1987).

Furthermore, the "clearly erroneous" standard of review mutually agreed upon by the parties makes an evaluation of the evidence that was before the arbitrator, based on a complete record of the proceedings, all the more imperative. We have repeatedly commented on the meaning of "clearly erroneous" in the context of evaluating prior factual determinations. "A finding of fact is clearly erroneous when there is *no evidence in the record to support it* . . . or when although there is evidence to support it, the reviewing court *on the entire evidence* is left with the definite and firm convic-

tion that a mistake has been committed." (Emphasis added; internal quotation marks omitted.) *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 70, 699 A.2d 101 (1997); *Crowell* v. *Danforth*, 222 Conn. 150, 156, 609 A.2d 654 (1992).

We acknowledge that the "clearly erroneous" standard agreed to by the parties is traditionally one that we have reserved exclusively for the evaluation of questions of fact. As noted at oral argument before this court, however, the question of whether the plaintiff's counsel was *entitled* to a fee award is not in dispute. Rather, the only issue that is before us is whether the *amount* of the fee awarded by the arbitrator was "clearly erroneous." This determination necessarily depends heavily on the arbitrator's factual findings related to the novelty and complexity of the plaintiff's case, the circumstances surrounding the plaintiff's decision to file suit prior to the expiration of the requisite ninety day waiting period, and the potential risk associated with the plaintiff's counsel taking the case. Accordingly, we must apply the clearly erroneous standard consistent with our precedent, which requires a review of the entire record that the arbitrator had before him prior to issuing, and subsequently to articulating, his phase II decision. Indeed, at oral argument before this court, the plaintiff characterized the clearly erroneous standard in this context as meaning "upon a review *of the entire evidence,* is there a definite and firm conviction that a mistake has been made." (Emphasis added.)

Additionally, we reiterate that, in making this determination "[i]t is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record devel-

oped by a trial court." (Internal quotation marks omitted.) *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 101, 861 A.2d 1160 (2004); see also Practice Book §§ 60-5 and 61-10. We have also applied this principle of appellate review within the context of evaluating arbitral awards and similar fact intensive motions. See *Steve Viglione Sheet Metal Co.* v. *Sakonchick*, 190 Conn. 707, 714, 462 A.2d 1037 (1983) ("[b]ecause the defendant has filed no transcript of the [arbitration] proceeding . . . our review of [his motion to open the trial court's judgment confirming the arbitration award] is limited" [citation omitted]); see also *Clairol, Inc.* v. *Enertrac Corp.*, 44 Conn. App. 506, 515, 690 A.2d 418 ("We note that [the plaintiff] put before the trial court a minimal record [of the arbitration proceeding] that failed to include the transcript of [the witness'] testimony. Absent that transcript, it was impossible for the trial court to determine whether any of his testimony was detrimental to [the plaintiff]."), cert. denied, 241 Conn. 906, 695 A.2d 537 (1997); *Covillion* v. *Northern Ins. Co. of New York*, 92 Conn. App. 268, 270, 884 A.2d 449 (2005) ("[I]t is impossible and unrealistic to require the trial court to make any determination absent the record of the arbitration proceedings. . . . Without an adequate record, we are left to speculation and conjecture . . . which . . . have no place in appellate review." [Citations omitted; internal quotation marks omitted.]).

On the basis of the preceding framework, we conclude that as the appellant in the present case, the plaintiff has failed to meet his burden with respect to the three claims that he advances on appeal. In short, in light of the demanding "clearly erroneous" standard agreed to by the parties, the resolution of each of the plaintiff's claims requires an examination of the entire record that was before the arbitrator when he issued, and subsequently articulated, his phase II award. In the absence of the transcripts from the phase II proceed-

ings, the record before us is inadequate, and therefore, the plaintiff has failed to "[produce] evidence sufficient to invalidate" the arbitrator's award. *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 146.

We are also mindful that the plaintiff's claims raise many thorny questions of law about how properly to calculate attorney's fees in a case such as this, including the role of the lodestar in that calculation. There is no binding Connecticut precedent to guide us. Furthermore, the federal case law sends unclear and at times seemingly conflicting messages. See, e.g., *Pennsylvania* v. *Delaware Valley Citizens' Council*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986) (noting that novelty and complexity of issues "are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award"); *DiFilippo* v. *Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) (noting that "the fact that a case is straightforward is not grounds to reduce lodestar award"); *Independent Living Aids, Inc.* v. *Maxi-Aids, Inc.*, 25 F. Sup. 2d 127, 132 (E.D.N.Y. 1998) ("the novelty and complexity of the issues . . . [is a factor] fully reflected in the lodestar calculation and cannot serve as independent bases for adjusting the basic fee award"); but see *Blanchard* v. *Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (citing novelty and complexity as one of twelve "factors to be considered in assessing the reasonableness of an award of attorney's fees"); *Nihon Keizai Shimbun, Inc.* v. *Comline Business Data, Inc.*, 1998 WL 274285 (S.D.N.Y. 1998) (affirming reduction of lodestar by more than $200,000 based in part on litigation's lack of complexity), aff'd, 166 F.3d 65 (2d Cir. 1999); *Wallace* v. *Fox*, 7 F. Sup. 2d 132, 141 (D. Conn. 1998) ("[o]nce [the lodestar has been] calculated, the court may, in its discretion, increase or decrease this figure by examining such factors as . . .

the complexity of the issues" [internal quotation marks omitted]).

Having reviewed the relevant federal case law, the only thing that becomes clear is that the federal jurisprudence in this area is not clear, and that the plaintiff's failure to present us with a complete record of the phase II proceedings is fatal to his claims. Indeed, only if the plaintiff were to prevail as a matter of law on the legal question of whether the novelty and complexity of the litigation is subsumed within the initial lodestar calculation, would the plaintiff's failure to provide a complete factual record be irrelevant. We are mindful, however, that "[w]e do not decide issues of law in a vacuum. In order to review an alleged error of law that has evidentiary implications, we must have before us the evidence that is the factual predicate for the legal issue that the appellant asks us to consider." *Taylor* v. *American Thread Co.*, 200 Conn. 108, 110, 509 A.2d 512 (1986). We conclude that in the absence of the transcripts from the phase II proceedings, which contained testimony from individuals capable of commenting on the case's novelty and complexity, as well as the factual circumstances surrounding the plaintiff's other claims,[10] it would be imprudent for us to attempt to resolve the complicated and thorny issues of law raised by the plaintiff. Accordingly, we decline to reach the merits of the plaintiff's claims.

The plaintiff contends nonetheless that the transcripts from the phase II proceeding are unnecessary to determine whether it was clearly erroneous for the arbitrator to make a downward adjustment to the fee award because the transcripts from the phase I proceeding, as well as the exhibits from both proceedings, provide all of the evidence necessary to support the plaintiff's original lodestar calculation. Specifically, the

---

[10] See footnote 7 of this opinion.

plaintiff argues that this material demonstrates that the defendant benefited from the plaintiff's action, the litigation was novel and complex, filing suit early in conflict with § 33-722 was necessary to avoid irreparable harm and, therefore, it was clearly erroneous for the arbitrator to make a downward adjustment to the plaintiff's attorney's fees. We disagree.

Even if we were to assume that we are able to reach the merits of the plaintiff's claims, the plaintiff asks us to assume further that, given the nature of the case, the volume of the pleadings, and the impending timing of one of the defendant's bonus payments, any factors to be considered in connection with his fee request militate in favor of leaving the presumptive lodestar intact. The plaintiff's approach, however, would require us to view the exhibits and other evidence from phase I and phase II in isolation, without the benefit of the very testimony from the separate phase II proceeding that the arbitrator heard to explain the other evidence's relevance to the plaintiff's fee request. It bears repeating that in order for us to conclude that the arbitrator's award was clearly erroneous, we would need to determine that there was *no* evidence in the record to support the award, or that *based on the entire evidence*, a mistake had been committed. See *Connecticut National Bank* v. *Giacomi*, supra, 242 Conn. 70. It is impossible to make such a determination when only one half of the record is available to us.

To conclude otherwise would completely ignore the potential significance of the phase II testimony and require us to second guess the judgment of the arbitrator, who is the only individual who had the benefit of weighing the complete record, inclusive of the testimony from the phase II proceeding. Additionally, such an approach would conflict with our clear preference for making every reasonable presumption in favor of the arbitration award and the arbitrator's acts and pro-

ceedings. See *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 145. It is not our role on appeal to try the arbitration proceeding de novo, an undertaking that would obviously defeat our "[wholehearted] endorse[ment] [of] arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) Id. The Second Circuit Court of Appeals has aptly noted that, as an appellate court, "[w]e do not sit in judgment over the wisdom of [an] arbitrator's holdings. . . . We do, however, review an [arbitrator's] decision to assure that it rests upon a barely colorable justification for the outcome reached." (Citation omitted; internal quotation marks omitted.) *Wallace* v. *Buttar*, 378 F.3d 182, 195 (2d Cir. 2004). In light of this deferential standard, and in the absence of the transcripts from the phase II proceedings that constitute the full and complete record for review, we decline to consider the merits of the plaintiff's claims and cannot conclude that the arbitrator's reduced fee award was clearly erroneous.

The judgment is affirmed.

In this opinion the other justices concurred.