******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DONNA VENEZIANO *v.* JAMES VENEZIANO
(AC 41296)

Elgo, Cradle and Suarez, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff had previously been dissolved, appealed to this court from the decision of the trial court denying his motion to open the judgment of dissolution on the basis of, inter alia, fraud. The defendant claimed that the court erred by, sua sponte, quashing certain subpoenas he issued in connection with his motion to open the judgment and in finding that he failed to establish probable cause that the dissolution judgment was procured through fraud or mutual mistake. *Held*:

1. The defendant could not prevail on his claim that the trial court abused its discretion in quashing the subpoenas at issue because the underlying civil action resulting in a final judgment of dissolution had been resolved and there was no active civil matter pending that would have permitted the defendant to subpoena witnesses and to conduct discovery in connection with his motion to open the judgment: the court properly interpreted the applicable legal principle of *Oneglia* v. *Oneglia* (14 Conn. App. 267), that once a court has rendered a final judgment, until and unless the court has opened that judgment, there can be no civil action within the meaning of the applicable statute (§ 52-197) or rule of practice (§ 13-2); moreover, because the fraud alleged by the defendant took place prior to the rendering of the judgment of dissolution, the motion to open did not implicate the trial court's continuing jurisdiction over an outstanding order; furthermore, because the plaintiff filed certain motions for contempt to effectuate and enforce orders of the court issued after it had rendered its judgment of dissolution, and the plaintiff did not take issue with the underlying judgment but, rather, the defendant's failure to comply with it, there was no active civil matter pending that gave the defendant the authority to issue subpoenas in connection with his unrelated motion to open the judgment, as a party may file a motion for contempt before or after judgment is rendered to effectuate prior judgments or otherwise enforceable orders.

2. The record was inadequate to review the defendant's claim that the trial court erred in finding that he failed to establish probable cause that the dissolution judgment was procured through fraud or mutual mistake; the defendant only submitted a nine page excerpt from a transcript of the relevant hearing, which related solely to the portion of the hearing in which the court addressed certain motions to quash, and did not provide additional portions of the transcript relating to the motion to open the judgment, such that it was not possible to make a determination regarding what the evidence presented at the hearing demonstrated about the issue of probable cause.

Argued March 2—officially released July 13, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Litchfield and tried to the court, *Pickard, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Dooley, J.*, quashed certain subpoenas issued by the defendant and denied the defendant's motion to open the judgment, and the defendant appealed to this court. *Affirmed.*

*Gregory Thomas Nolan*, with whom, on the brief, was *Patsy Michael Renzullo*, for the appellant (defendant).

*Regina M. Wexler*, with whom, on the brief, was

*Judith Dixon*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. The defendant, James Veneziano, appeals from the judgment of the trial court denying his motion to open the judgment dissolving his marriage to the plaintiff, Donna Veneziano. The defendant claims that the court erred (1) by, sua sponte, quashing subpoenas issued in connection with his motion to open the judgment and (2) in finding that he failed to establish probable cause that the dissolution judgment was procured through fraud or mutual mistake. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties were married in February, 1969. In February, 2012, the plaintiff commenced a dissolution action against the defendant. On October 29, 2013, the court, *Pickard*, *J.*, rendered a judgment of dissolution, which incorporated by reference a marital settlement agreement of the parties. At the time of the dissolution, the parties jointly owned, among other things, a marital home in Winchester and 1835 shares of stock in Village Mortgage Company (Village Mortgage). Under § 6.1 of the marital settlement agreement, the plaintiff was required to quitclaim her interest in the parties' marital home to the defendant, and the defendant was to hold her harmless and indemnify her from a home equity line of credit on the property and any and all expenses, costs, notes and liens associated with the property. The defendant was then required either to apply to refinance the equity line of credit on the home by October 29, 2015, or to list the property for sale with a licensed real estate agent at a price recommended by the agent by May 1, 2016. Section 6.6.1 of the marital settlement agreement provided that the parties were to divide equally the 1835 jointly owned shares of Village Mortgage stock.

On November 30, 2016, the plaintiff filed a motion for contempt in which she alleged that the defendant "ha[d] neither refinanced the home to remove [her] name therefrom, nor ha[d] he listed the property for sale with a licensed [real estate agent] by May 1, 2016." She further alleged that she had made payments on the home equity line of credit because the defendant had failed to do so. A hearing on the motion was scheduled for January 3, 2017.

On January 17, 2017, the parties entered into an agreement, which became an order of the court, to resolve the November 30, 2016 motion for contempt, requiring the defendant to make monthly payments to Chase Bank for past due property taxes on the marital home, and to the town of Winchester for current property taxes on the marital home. The agreement also required the defendant to reduce the listing price in ninety days if the property was not under contract. The matter was continued to May 1, 2017, for review. On May 1, 2017,

the parties entered into another agreement, which became an order of the court, requiring the defendant to continue making the payments to Chase Bank, and to again reduce the listing price of the marital home in ninety days if the home was not under contract. On July 26, 2017, the plaintiff filed a separate motion for contempt alleging that the defendant failed to abide by the May 1, 2017 order.

On August 31, 2017, the defendant filed a motion to open the judgment of dissolution on the basis of fraud and intentional misrepresentation. The defendant subsequently amended the pleading to include a claim of mutual mistake. He alleged that all 1835 shares of Village Mortgage stock had been transferred to the plaintiff prior to February 1, 2012, without his knowledge. He further alleged that, during the dissolution proceeding, the plaintiff misrepresented to the court that both parties jointly owned the 1835 shares of stock. Accordingly, he argued, the divorce decree was "a product of actual fraud" and "must be opened." To support this allegation, the defendant attached to his amended pleading a required regulatory filing by Village Mortgage with the Department of Banking that listed the direct owners and executive officers of Village Mortgage.[1] This regulatory filing purportedly showed that the defendant was no longer a direct owner or an executive officer of Village Mortgage as of February 1, 2012. It does not, however, indicate the number of shares that each owner or executive officer had in Village Mortgage as of February 1, 2012.

The defendant issued four subpoenas in connection with his motion to open. On September 12, 2017, the defendant issued a subpoena to the Department of Banking requesting that it authenticate a certified copy of the regulatory filing that it previously had provided to him. On September 22, 2017, the Department of Banking moved to quash this subpoena. On October 10, 2017, the court, *Dooley, J.*, held a hearing on the motion to quash and granted it. The defendant also issued subpoenas to Justin Girolimon, a vice president of Village Mortgage, and Laurel Caliendo, the president of Village Mortgage. On October 3, 2017, Girolimon and Caliendo moved to quash the subpoenas. The defendant objected to the motions to quash and on October 30, 2017, the court, *Danaher, J.*, sustained the defendant's objections. Lastly, the defendant issued a subpoena to Hailey Gallant Rice, another vice president of Village Mortgage. On November 2, 2017, Rice moved to quash the subpoena. On November 14, 2017, the defendant objected to the motion.

On November 15, 2017, the court, *Dooley, J.*, held an evidentiary hearing on the plaintiff's motions for contempt and a preliminary hearing on the defendant's motion to open. As an initial matter, the court addressed the motions to quash the subpoenas and the objections

thereto. The court effectively revisited prior rulings with respect to the subpoenas and resolved any pending motions to quash by concluding that there was no authority for counsel to have issued *any* subpoenas in this matter. The court stated that, pursuant to *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 540 A.2d 713 (1988), "on a motion to open, there is absolutely no authority to conduct any discovery unless and until a decision is made by the court on a preliminary basis to open the judgment for the purpose of allowing discovery." The court further concluded that "there [was] no civil action pending from which our statutes and our Practice Book [gave] us authority to issue subpoenas and otherwise conduct discovery."[2] The court excused the witnesses present in the court who had responded to the defendant's subpoenas, and proceeded with the evidentiary hearing on the plaintiff's motions for contempt and a preliminary hearing on the defendant's motion to open.

On December 4, 2017, the court, in a memorandum of decision, denied the defendant's motion to open. The court, *Dooley, J.*, concluded that "the defendant failed to establish probable cause that the judgment was procured through fraud or mutual mistake."

On December 6, 2017, in a separate memorandum of decision, the court found that the defendant wilfully violated its May 1, 2017 order and granted the plaintiff's motions for contempt.

On December 21, 2017, the defendant filed a motion to reargue his motion to open. On January, 5, 2018, the court, *Dooley, J.*, denied the motion. This appeal followed.[3] Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court erred by, sua sponte, quashing his subpoenas issued in connection with his motion to open the judgment.[4] Specifically, he asserts that the court erred in relying on *Oneglia* v. *Oneglia*, supra, 14 Conn. App. 267, when it quashed the subpoenas and that, instead, it should have relied on *Brody* v. *Brody*, 153 Conn. App. 625, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014). We disagree.

"[A] trial court's decision to quash a subpoena is . . . reviewed on appeal under the abuse of discretion standard. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. . . . In determining whether there has been an abuse of discretion, much depends upon the circumstances of each

case." (Citation omitted; internal quotation marks omitted.) *DeRose* v. *Jason Robert's, Inc.*, 191 Conn. App. 781, 799, 216 A.3d 699, cert. denied, 333 Conn. 934, 218 A.3d 593 (2019). Although the ruling is discretionary in nature, we nonetheless must afford plenary review to the issue of whether the court applied the correct legal principle to the facts before it. See *State* v. *Saucier*, 283 Conn. 207, 218–19, 926 A.2d 633 (2007) (trial court's interpretation of law is subject to plenary review and its application of correct view of law is subject to review for abuse of discretion).

General Statutes § 52-197 (a) provides in relevant part: "In any civil action, the court, upon motion of either party, may order disclosure . . . ." Practice Book § 13-2 provides in relevant part: "In any civil action . . . a party may obtain . . . discovery of information or disclosure, production and inspection of papers, books, documents and electronically stored information material to the subject matter involved in the pending action . . . ." Once a court has rendered a final judgment, "[u]ntil and unless the trial court [has] opened the previous judgment, there [can] be no 'civil action' within the meaning of . . . § 52-197 or Practice Book § [13-2]." *Oneglia* v. *Oneglia*, supra, 14 Conn. App. 270 n.2.

"[A]though a motion to open a judgment normally must be filed within four months of entry of the judgment . . . a motion to open on the basis of fraud is not subject to this limitation . . . . In *Oneglia*, this court rejected a claim that a party, following the entry of a judgment of dissolution, had a right to conduct discovery and to compel the defendant to testify, based only on [the] filing of a motion to open. . . . The court explained that [t]his is clearly an incorrect premise; until the court acts on a motion to open, the earlier judgment is still intact and neither our rules of practice nor our statutes provide for such a thing as postjudgment discovery. . . .

"*Oneglia* and its progeny are grounded in the principle of the finality of judgments. . . . [T]he finality of judgments principle recognizes the interest of the public as well as that of the parties [that] there be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligations to act further by virtue of having been summoned into or having appeared in the case. . . . Without such a rule, no judgment could be relied on. . . . *Oneglia* carefully balanced that interest in finality with the reality that in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity. . . . The court in *Oneglia* thus ratified the gatekeeping mechanism employed by the trial court, whereby a court presented with a motion to open by a party alleging fraud in a postjudgment dissolution proceeding conducts a preliminary hearing

to determine whether the allegations are substantiated. . . . The court held that [i]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court [properly] would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Brody* v. *Brody*, supra, 153 Conn. App. 631–32.

This court also had occasion to address *Oneglia* in *Bruno* v. *Bruno*, 146 Conn. App. 214, 216, 76 A.3d 725 (2013), a case in which a trial court permitted a plaintiff husband and his current wife "to obtain discovery upon their filing of motions to open certain postjudgment orders on the basis of alleged fraudulent conduct on the part of the defendant [wife] without first substantiating their allegations of [the defendant's] fraud beyond mere suspicion in a court hearing." On appeal, the defendant wife argued that "the court did not have the authority to permit discovery without first making a preliminary finding [of fraud]." Id., 229. This court agreed, and held: "Until a motion to open has been granted, the earlier judgment is unaffected, which means that *there is no active civil matter.* . . . In this postjudgment posture, discovery is not available to the moving party for the simple reason that discovery is permitted only when a cause of action is pending." (Citation omitted; emphasis added.) Id., 230–31. This court remanded the case to the trial court with direction to make a preliminary finding, consistent with *Oneglia*, as to whether probable cause existed to open the judgment *prior* to ruling on the plaintiff husband's request for discovery in connection with his motion to open. Id., 216.

In the present case, the defendant argues that the court should have relied on *Brody*, which, he contends, permitted postjudgment discovery because it "held that *Oneglia* is inapplicable if a motion for contempt has been filed." He further argues that because the plaintiff filed motions for contempt, there was an "active civil matter pending" that gave him the authority to issue subpoenas in connection with his motion to open the judgment. In support of this argument, he contends that *Brody* also held that "when a party has moved for contempt, a civil action is pending, and parties' attorneys have authority to issue subpoenas." The defendant notes that, in the present case, the court held hearings on the motions for contempt and the motion to open on the same date. He also relies on his representation to this court that the plaintiff issued a subpoena to a witness in connection with the motions for contempt, and that the court permitted the witness to produce documents and testify in accordance with this subpoena at the November 15, 2017 hearing, even though it had, on the same date, quashed the subpoenas issued in connection with the motion to open.[5] He states

that "[i]t cannot be the case that one party has authority to issue a subpoena for a hearing, while the adverse party lacks that same authority." We disagree.

"Motions for contempt implicate the court's inherent equitable authority to effectuate and vindicate its judgments. . . . Although ordinarily our trial courts lack jurisdiction to act in a case after the passage of four months from the date of judgment . . . there are exceptions. One exception arises when the exercise of jurisdiction is necessary to effectuate prior judgments or otherwise enforceable orders." (Citations omitted; internal quotation marks omitted.) *Brody* v. *Brody*, supra, 153 Conn. App. 635.

In *Brody*, the trial court rendered judgment dissolving a marriage and entered various financial orders. Id., 627. Three years later, the defendant moved to open the judgment and filed a motion for contempt. Id., 627–28. The plaintiff filed her own motion for contempt against the husband based on an allegation of fraud.[6] Id., 628. While her motion for contempt was pending, the plaintiff issued a subpoena to the sister of the defendant requiring her to produce certain documents and to appear at a deposition. Id. The sister filed a motion to quash the subpoena and a motion for a protective order, and, after a hearing, the court denied both motions. Id., 629. In a writ of error brought to this court, the sister argued, among other things, that there is no general right to postjudgment discovery in Connecticut, and that, "[b]ecause the court did not conduct a hearing pursuant to *Oneglia* prior to denying her motions . . . the court lacked the authority to allow the plaintiff to engage in postjudgment discovery." Id., 630.

In dismissing the sister's writ of error, this court stated that "*Oneglia* concerns the authority of a trial court to act on a request for postjudgment discovery pertaining to allegedly fraudulent conduct that transpired *prior* to the entry of the underlying judgment." (Emphasis in original.) Id., 630–31. Further, this court explained, "*Oneglia* and its progeny do not implicate the trial court's continuing jurisdiction to effectuate its outstanding orders, but rather deal with allegations that an underlying judgment has been procured by fraud. For that reason, this court has held that a party may only engage in what we termed 'postjudgment discovery' after the party first moves to open the judgment and establishes the allegations of fraud beyond mere suspicion. . . .

"By contrast, [*Brody*] plainly involves the court's continuing jurisdiction to effectuate and vindicate outstanding orders. The plaintiff's allegations of fraud arise from conduct *subsequent* to the entry of judgment and involve the defendant's allegedly wilful noncompliance with the court's outstanding orders. For that reason, no motion to open was needed to confer authority on the trial court to allow discovery, as the court's continu-

ing jurisdiction over the matter necessarily conveyed upon it the authority to do so." (Citations omitted; emphasis in original.) Id., 635–36.

The defendant's reliance on *Brody* is misplaced. Although *Brody* and the present case both involve allegations of fraud, the fraud alleged in *Brody* took place *after* the judgment of dissolution was rendered and the plaintiff in *Brody* sought to vindicate her rights under the dissolution judgment by filing a motion for contempt. See id., 637 ("[p]ermitting discovery as part of a postjudgment motion for contempt vindicates a party's interest in obtaining competent evidence of contempt, including contempt accomplished through fraudulent conduct").

*Brody* is factually distinguishable from the present case. The fraud allegations in the present case, in contrast to the allegations in *Brody*, took place prior to the rendering of the judgment of dissolution. Thus, unlike in *Brody*, the motion to open at issue in the present case did not implicate the trial court's continuing jurisdiction over an outstanding order. When a party alleges fraud that took place before a judgment is rendered, it is well settled that a court must first determine whether there is probable cause to open the judgment for the limited purpose of proceeding with discovery related to the fraud claim. See, e.g., *Bruno* v. *Bruno*, supra, 146 Conn. App. 231. As this court observed in *Brody*, to permit discovery in such a situation without first finding probable cause, a court would impermissibly disturb the finality of the underlying judgment. See *Brody* v. *Brody*, supra, 153 Conn. App. 632.

Additionally, we reject the defendant's argument that, because the plaintiff filed motions for contempt, there was an "active civil matter pending" that gave him the authority to issue subpoenas in connection with his unrelated motion to open the judgment. The defendant again misstates *Brody*'s holding in support of this argument, and cites no other authority that supports this proposition.

A party may file a motion for contempt before or after judgment is rendered to effectuate prior judgments or otherwise enforceable orders. In the present case, the plaintiff first filed a motion for contempt seeking to effectuate the judgment of dissolution requiring the defendant to list the marital home for sale and to make certain payments to protect her interest in the property. After the court issued an order in connection with this motion, the plaintiff filed a second motion alleging that the defendant was not complying with court orders. The purpose of both motions was to effectuate and to enforce orders of the court issued *after* the court had rendered its judgment of dissolution. Thus, the plaintiff did not take issue with the underlying judgment, but rather the defendant's failure to comply with it. Our review of the record reflects that when the court permit-

ted the plaintiff's subpoenaed witness to testify in the present case, it did so for the limited purpose of permitting the plaintiff to present information about the defendant's compliance, or lack thereof, with orders previously entered related to the marital home and arising from the final judgment. Because the underlying civil action resulting in that final judgment had been resolved, there was no active civil matter pending that would have permitted the defendant to subpoena witnesses in connection with his motion to open the judgment. Thus, we conclude that the court properly interpreted the applicable legal principle, as set forth in *Oneglia*, and that it correctly applied the law in quashing the subpoenas at issue in this claim and, thus, the defendant is unable to demonstrate that its ruling reflected an abuse of discretion.

## II

The defendant next claims that the court erred in finding that he failed to establish probable cause that the dissolution judgment was procured through fraud or mutual mistake.[7] We conclude that the defendant has not provided this court with an adequate record to review this claim.

As the defendant correctly acknowledges in his brief, this court's review of the trial court's judgment with respect to the issue of probable cause is dependent upon the particular facts before the court at the time of its ruling. "We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Pospisil* v. *Pospisil*, 59 Conn. App. 446, 449, 757 A.2d 655, cert. denied, 254 Conn. 940, 761 A.2d 762 (2000).

In the present case, the court held an evidentiary hearing on November 15, 2017, to address the subpoenaed parties' motions to quash, the defendant's motion to open the judgment, and the plaintiff's motions for contempt. The defendant has only provided this court with a nine page excerpt from a transcript of the November 15, 2017 hearing. This excerpt relates solely to the portion of the hearing in which the court addressed the motions to quash. The defendant did not, however, provide us with additional portions of the transcript relating to the motion to open the judgment. The plaintiff aptly argues that it is not possible for this court to "make any determination regarding what the evidence

presented at the November 15 hearing demonstrated [about the issue of probable cause] when none of that evidence is before [it]." In his reply brief, the defendant argues that the remaining portion of the transcript is "irrelevant" because much of it "is almost entirely related to the [plaintiff's] motions for contempt, which are not on appeal." We agree with the plaintiff.

It is the responsibility of the defendant, as the appellant, to provide this court with an adequate record for review. Practice Book § 61-10; see also Practice Book § 60-5. "[I]t is incumbent upon the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.) *Stutz* v. *Shepard*, 279 Conn. 115, 125–26, 901 A.2d 33 (2006). If a claim requires appellate review of the evidence, and the evidence before the trial court consisted in whole or in part of testimony, the failure to provide the reviewing court with transcripts deprives this court of the ability to review the evidence. See, e.g., *Desrosiers* v. *Henne*, 283 Conn. 361, 366–67, 926 A.2d 1024 (2007); *O'Halpin* v. *O'Halpin*, 144 Conn. App. 671, 675–76, 74 A.3d 465, cert. denied, 310 Conn. 952, 81 A.3d 1180 (2013).

We cannot evaluate the court's decision with regard to the issue of probable cause without the portions of the hearing transcript that are related to this issue. On the basis of the court's memorandum of decision, we can glean that the plaintiff testified about the alleged stock transfer and that stock certificates, which indicate that the plaintiff and the defendant jointly owned 1835 shares of Village Mortgage stock until September, 2014, were admitted into evidence. We do not know, however, the specific testimony that the court heard about the stock transfer. Most importantly, although the regulatory filing serves as the basis for the defendant's fraud claim, without the ability to review testimony concerning the regulatory filing, we are deprived of the ability to review testimony concerning this document. The defendant's representations about what transpired at the hearing are an inadequate substitute for our thorough and necessary examination of all of the evidence that was before the court at the time of its ruling. Accordingly, we conclude that the record is inadequate for this court to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The February 1, 2012 regulatory filing shows that both parties were owners or executive officers of Village Mortgage at some point during the course of their marriage.

[2] In its subsequent memorandum of decision, the court reiterated that, in light of the procedural posture of the case, it had determined that the

subpoenas that had been issued by the defendant's counsel were not legally authorized and that it had "vacated prior orders sustaining the defendant's objections to the motions to quash . . . ."

[3] As part of this appeal, the defendant also appealed the court's decision granting the plaintiff's motions for contempt. This court dismissed this portion of the appeal as untimely.

[4] We note that in his statement of this claim, the defendant also states that the court "erred in denying [his] motion to reargue, because there was an active civil matter pending based upon the plaintiff's two motions for contempt and service upon [him] of a summons and order to show cause . . . ." The defendant does not thereafter refer to or analyze the court's ruling on his motion to reargue in this section of his brief, nor does he analyze this portion of the claim anywhere in his brief. Accordingly, we consider this portion of the claim to be abandoned. "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Keating* v. *Ferrandino*, 125 Conn. App. 601, 603–604, 10 A.3d 59 (2010).

[5] In connection with the motions for contempt, the plaintiff subpoenaed the real estate agent who listed the marital home for sale to provide information about the listing. In his brief to this court, the defendant represents that the agent "appeared, testified and produced the subpoenaed documents" at the November 15, 2017 hearing on the motions for contempt. As we discuss in greater detail in part II of this opinion, the defendant has not provided this court with any portions of the hearing transcript related to the motions for contempt. Thus, we do not know if the agent appeared, testified or produced any documents requested in the subpoena issued by the plaintiff.

[6] Specifically, the plaintiff alleged that the defendant had failed to make payments in accordance with certain financial orders, and that he had received other monetary distributions that he did not disclose to her in violation of the order. *Brody* v. *Brody*, supra, 153 Conn. App. 628.

[7] In his brief to this court, the defendant states that, "on the date judgment entered, October 29, 2013, the parties' financial affidavits were inaccurate, either through fraud, intentional misrepresentation *or mutual mistake* . . . ." (Emphasis added.) He makes no reference to mutual mistake elsewhere in his brief. We do not consider this aspect of his argument, as it is inadequately briefed.